JOHN V. FARWELL, Appellant, *v.* THOMAS D. LOWTHER, Appellee.

APPEAL FROM COOK.

A contract or proposition for the sale of real estate, if signed by the party to be charged, though not accepted in writing, if accepted without varying the terms, of which due notice is given, will take the case out of the statute of frauds.

The contract must all be in writing; must specify the parties, terms. price and a description of the property; and the acceptance of it must be simple and unconditional.

THIS was a suit in chancery commenced by John V. Farwell, appellant, against Thomas D. Lowther, appellee by bill of complaint filed in the Cook Circuit Court, on the chancery side thereof, to enforce the specific performance of an alleged contract of sale of certain lots of land in the city of Chicago. Said suit was tried before MANIERRE, Judge, at October term of said court, A. D. 1856.

The bill of complaint sets forth that in the month of September, A. D. 1855, said Lowther was, or pretended to be, the owner in fee simple of lots numbered seven and eight, in block numbered ten, in Fort Dearborn addition to the city of Chicago.

That on or about the 15th day of said September, said Farwell wrote to said Lowther, requesting him to give the price and terms on which he would sell said lots. That said Lowther immediately replied to said Farwell by letter, in which he made a proposition in the words following:

"Not one hour ago I authorized an agent to sell those lots on the following terms which I give to you exactly as to him, viz. :

"'Six hundred dollars per foot front, ten per cent cash, the rest on bond and mortgage for say ten years at eight per cent. interest, the lots to be improved of course. Off this price I should have to allow two and a half per cent. commission if I sold through the broker.'" That in a subsequent part of the same letter said Lowther stated that he, being a moderate man, the price he had fixed would be satisfactory, and he thought upon that basis he and said Farwell could agree about details. That said Farwell received said letter on the seventeenth of said September, and immediately called on said Lowther, and acceded to the above terms, as stated in said letter.

That on the morning of the eighteenth of said September, said Farwell and said Lowther both directed one Cyrus M. Hawley to make out a mortgage to secure the deferred payments on said lots, the said Lowther giving to said Hawley a particular description of said lots and said contract.

That at the time it was understood between the parties that said mortgage should be a common mortgage, but that subsequently, on the same day at the request of said Lowther, it was agreed to insert a power of sale in said mortgage and to make said interest payable semi-annually, and to insert a clause in said mortgage requiring the building to be erected on said lots to be insured to the full amount, which responsible companies would be willing to insure thereon, and that the insurance policies should be assigned to said Lowther as additional security; and that said Lowther, in case of loss or damage by fire, should, at the request of said Farwell, use the money recovered on said insurance policies in repairing or reconstructing the buildings on said lots. The bill then states that said Farwell has been ready to perform his part of said agreement, that he several times applied to said Lowther and requested him specifically to perform his part thereof.

That on the 4th day of October, A. D. 1855, said Farwell tendered to said Lowther twenty-eight hundred and eighty dollars, the amount of the cash payment on said lots, and also a bond for the deferred payments properly executed, and a mortgage on said lots, to secure the same, properly executed; said bond and mortgage being made in accordance with the aforesaid contract, and requested said Lowther to perform his part of said contract.

Said bill charges that said Lowther declines and refuses to perform his part of said contract, and that the whole of said first payment hath been ready and unproductive in the hands of said Farwell, for completing the said purchase, from the time it ought to have been completed by the terms of said contract.

The answer of said Lowther under oath is waived.

The bill then contains a prayer that said Lowther should be compelled specifically to perform his said contract, and that the writs of injunction and of summons might issue.

The answer admits that said Lowther was seized of said lots at the time stated in said bill and had a fee simple estate therein, and that on or about the 15th day of September, 1855, he received from said Farwell a letter asking the terms on which he would sell said Farwell said lots.

Said answer then states that Lowther wrote to Farwell a letter which is set out by Farwell in said bill.

Lowther denies that the terms stated in said letter constituted a definite proposition to sell said lots to said Farwell, but were only given as the basis of an agreement, upon which Lowther was willing to negotiate, and was treated as such by both parties in their subsequent correspondence and conversation.

Said answer further states that on the 17th day of September, A. D. 1855, Lowther received from Farwell a letter in answer to letter above referred to, of which the following is a copy:

"CHICAGO, Sept. 17th, 1855.

THOMAS D. LOWTHER, ESQ.,

DEAR SIR: Yours with proposition is received. Your terms are *very steep.* Nevertheless rather than have any one buy it without knowing that they will improve, I should rather take the chances myself of that cool $20,000 at all events. I should like to see you before a sale is made and know who is buying, and if it is any of our wild speculators in real estate, would like to put my lot in at a proportionate valuation with yours and change my quarters, which I can do to good advantage. If a speculator has taken up your proposition in the time you are away of your agent, you may consider me a purchaser, less the commission you would pay your agent on your basis, particulars to be arranged hereafter, and as having accepted this morning, unless the said party will buy mine, in which case I would rather sell.                    Yours, very truly,

JOHN V. FARWELL.

The answer further states that said Lowther never made any other proposition of any kind in writing to said Farwell, and never received any answer or acceptance in writing from said Farwell, other than as above set forth, and that all other propositions, on the part of said Lowther, relative to the sale of said lots to said Farwell, and all other communications acceding thereto, on the part of said Farwell, were not in writing, nor was there any memorandum thereof signed by said Lowther or said Farwell, or by any person legally authorized to sign for them or either of them, and that the same were void as being contrary to the statute against frauds and perjuries, and said Lowther claims the benefit of said statute as fully as

if the same had been specially pleaded. The answer concludes in the usual form. Farwell filed a general replication to the answer.

The court, after hearing the evidence and the argument of counsel, found the issue for the defendant and entered an order and decree dissolving the injunction issued in said cause, and dismissing complainant's bill with costs.

The complainant excepted to the entering of this decree and order and appealed to this court.

WILLIAMS and WOODBRIDGE, for Appellant.

C. BECKWITH and J. V. LE MOYNE, for Appellee.

SCATES, C. J. Among other defenses, the defendant relies upon the statute of frauds.

Except so far as the application of the statute may vary them, the principles laid down in the cases of *McConnell* v. *Brillhart*, 17 Ill. R. 354, and *Esmay* v. *Negus et al.*, 18 Ill. R. *post*, are applicable to and must govern the questions of like character in this case.

The position so strongly insisted on here, that the acceptance must be also in writing, else the obligation is not mutual, inasmuch as each party may not be able to enforce it specifically, was considered and disposed of in that case. We do not regard the question as open to discussion, considering it settled by the current and weight of authority in favor of the validity of a contract, under the statute of frauds, when signed by the party to be charged therewith, though not signed by the other party. We may refer to some additional authorities here. 14 John. R. 484; 16 Wend. R. 465; 9 Ves. Jr. R. 234, 351; *Seton* v. *Slade*, 7 ibid. 265, and note *c.*; 2 Bingh. N. C. R. 735 (29 Eng. C. L. R. 469); 1 Sugd. Vend. 133, clause 7; 5 Sand. R. 101; 15 Eng. Law and Eq. R. 376; Chit. on Cont. 70; 3 John. Cas. 61; 1 Greenlf. Ev. Sec. 268.

The decision of Lord Redesdale in *Lawrenson* v. *Butler*, 1 Scho. and Lef. R. 13, 18, has been repeatedly overruled, and so of the case of *Champion et al.* v. *Plummer*, 4 Bos. and Pull. R. 252. Lord Ch. Jus. Edan did not approve the former in *Huddleston* v. *Briscoe*, 11 Ves. Jr. R. 592, but simply declined to discuss it in that case. The matter seemed to be rather an accidental remark than a decision in *Gaunt* v. *Hill*, 1 Stark. N. P. R. 10 (2 Eng. C. L. R. 15). But the rule is too firmly settled, by too many well considered cases, to be shaken by the above decisions.

But there must be a simple acceptance, without varying the terms, and the other party ought to have due notice of that

acceptance. 1 Sugd. on Vend. 117, and note 1, 124–25 ; 1 Parson on Cont. 400 (3 Eng. C. L. R. 450).

Here are circumstances, under which we should expect and require evidence of a written acceptance—not indeed because a parol acceptance would not bind both parties—but because it might be impossible to show such acceptance within a reasonable time, where propositions, by letter, are sent great distances by mail, and no other mode is left of returning an answer of acceptance. In some cases, the propositions require a written acceptance, and this, like any other term or condition, must be accepted as made. These circumstances explain some of the cases, that would otherwise appear to require written acceptances as necessary to the validity of the contract. *Gaunt* v. *Hill,* 1 Stark. R. 12 (2 Eng. C. L. R. 15).

While a parol acceptance of a written offer or contract may be good—and parol evidence may be resorted to, for ascertaining the identity of the party, and of the property, etc., yet the contract itself cannot be partly in writing and partly in parol, but the writings must contain the parties, the terms, price and a description of the property on their face, or by reference. *Esmay* v. *Negus,* 18 Ill. R. *post ; McConnell* v. *Brillhart,* 17 Ill. R. 360, and authorities ; 1 John. Ch. R. 273 ; 1 Greenlf. Ev., Sec. 268 ; 13 John. R. 297 ; 3 ibid. 210 ; 16 Wend. R. 28 ; 1 N. Hamp. R. 157 ; 4 Barn. and Ald. R. 595 (6 Eng. C. L. R. 616) ; 3 Brod. and Bingh. R. 14 (7 Eng. C. L. R. 328).

It would be difficult for any one to draw up the necessary writings, in detail, to carry into effect the proposition contained in defendant's letter of 15th September. It is true the most essential terms are in it. But parties might well differ about the bond and mortgage, whether interest was payable semi-annually, annually, or at the end of the credit—about the kind, and value of improvements to be made, and within what time—and whether the brokerage of two and a half per cent. was to be a deduction from the price. Some of them, a court of equity would, doubtless, enforce as in the usual course of business of that character ; others present difficulties of a much more serious nature.

But waiving all objection to the proposition on these grounds, we think the terms were not accepted. Plaintiff's note of 17th September was conditional as to the *fact* of acceptance. Rather than have certain persons who would not improve the lots, he would buy, and in case such should offer to buy, he might be considered as accepting. Should others want to buy and would take his lot in at a proportionate value, he would rather sell. There are too many contingencies, and no one could tell from the letter, without inquiry as

The Illinois and Wisconsin R. R. Co. *v.* Von Horn.

to the happening of the events referred to, whether he had or had not accepted. It is not such simple acceptance as would enable the defendant to sue upon.

When the parties afterward met, we find them differing about the details to be arranged upon the basis offered in the letter — and this difference resulted in a mutual abandonment of the nogotiation — with crimination and recrimination of each other as having backed out from the proposition. Yet each seems to have endeavored to draw out the details from that base, with an honest purpose to arrive at a result. Even the amount became a subject of dispute, when the equivalent of $600 per foot was sought to be gained, by increase of the principal at six per cent.

We have not gone into the figures to ascertain whether the plaintiff was right in his amounts, and his offer of title papers proper, because we are of opinion that the proposition itself was too indefinite for the court to enforce, without making a bargain for the parties, and such as it was, it was not simply and unconditionally accepted.

If there were no other difficulty in detailing these general terms, it would be impossible for the court to fix upon the character and cost of the improvements to be made. What shall be the kind, style and value? one or twenty thousand? Upon this depends very much the mortgage security.

*Decree affirmed.*