## ISRAEL B. HOLMES

*v.*

## JOHN H. HOLMES.

1. A, a minor, purchased his time from his father, and afterward by his own labor, and during his minority, earned a land warrant, with which he entered 160 acres of land in his own name. In a suit in chancery, brought by his father, to compel a conveyance to him of one-half of the land, upon an alleged verbal agreement, made with A before the entry of the land, that the same should be entered in A's name, but that when he arrived at majority he should convey to him one-half of the tract, the bill alleging that at the time of such entry complainant was entitled to the services of A, and therefore owned the warrant with which the land was entered, — held, that the land belonged to A, the proof showing that complainant was not entitled to A's services at the time he earned and obtained the warrant with which the entry was made.

2. CONTRACT — *verbal*—*for conveyance of lands — when confers no title.* A mere naked promise by a party to convey lands, supported by no consideration, if not afterward executed by a conveyance, confers no title, either legal or equitable, in the premises.

3. TRUSTS — *resulting — when cannot be raised.* A resulting trust cannot be created, unless the money of the *cestui que trust* was used in the purchase of the property in which the trust is claimed to exist.

4. SAME — *cannot be created by contract.* A resulting trust cannot be created by a contract or an agreement.

5. CONTRACT — *for conveyance of lands — when within the statute of frauds.* In this case, if a trust of any kind was created, by the agreement, between A and complainant, to convey the land, it was an express trust, and, there being no proof of the payment of the purchase money, the contract was void, being within the statute of frauds.

6. SAME — *when may be taken out of the statute.* A verbal contract for the sale of real estate may be taken out of the statute of frauds, by a payment of the purchase money, being let into possession, and the making of lasting and valuable improvements.

7. SAME —*payment of purchase money indispensable.* While all of these acts may not be required to take a case out of the statute, yet payment of the purchase money is regarded as essential to have such effect.

APPEAL from the Circuit Court of Winnebago county; the Hon. BENJAMIN R. SHELDON, Judge, presiding.

This was a suit in chancery, instituted, by the appellee in the court below, against the appellant, to obtain the conveyance from appellant and wife of the legal title to the east half of the north-west quarter of section 26, T. 26, R. 10, E. of the 4th P. M., in Winnebago county, Illinois, upon the ground that appellant held the legal title to the same, as trustee for the use and benefit of appellee. The further facts in this case are fully stated in the opinion. The court below entered a decree in favor of appellee, to reverse which the case is brought to this court by appeal.

Messrs. LELAND & BLANCHARD, for the appellant.

Messrs. BROWN & TAYLOR, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It appears, from the evidence in this case, that appellant, in April 1849, entered in his own name, at the land office in Dixon, with a land warrant, the premises in controversy. It appears that he was a minor at the time of the entry, but that he had by his own labor earned the warrant with which the land was purchased. Also, that in 1847, appellant had worked two months for Smith, and nine months in 1848, for which Smith was to pay him $100, with which it was agreed that a land warrant should be purchased, and appellee to pay whatever that sum might lack in paying for it, and with it the land was to be purchased, each to have one-half of the land when entered. Smith hired appellant at that time of appellee. After the labor was performed appellee wanted Smith to indorse a note for him for the amount of the wages, but he declined

unless appellant would consent. He however objected that the money should be thus appropriated, until his father, appellee, agreed to emancipate him then, if he would give him the $100, and would permit him to work for himself and appropriate his future earnings to his own use. This arrangement was made.

Appellant worked again for Smith in 1849, and earned and obtained the warrant with which the land was entered. He acted for himself in making the contract for his wages that year. He went to the land office, and entered the land in person and in his own name, with the full concurrence and under the advice of his father.

There was some evidence tending to contradict the evidence of Smith, that appellee had told him that the land was entered by appellant with his own means, and that it was his. Some members of the family testify that it was the understanding of the parties that half of the quarter was to belong to each at the time appellant left for Dixon to enter the land. But we think there is no doubt that the warrant with which the entry was made belonged to appellant. This is proved by Smith, who was cognizant of the agreement, that if appellant would give up the $100 first earned by appellant, that his father would give him his time, and that he might do as he pleased with his earnings. Also, by the statements of the father to different persons, that the land belonged to appellant. Nor is there any evidence as to how the father became entitled to any portion of the warrant, or of the land with which it was entered.

If the land warrant belonged to appellant, and of this we think there is no doubt, the land must have been his, as it was entered with the warrant and in his own name. A mere naked promise, if one was ever made, if not afterward executed by a conveyance, would confer no title, either legal or equitable. And so far as we can see the means employed in entering the land was the property of appellant; and if he offered to convey one-half to his father after he should make the entry, no consideration was then or subsequently paid to support the promise. It is true, that there is evidence that appellant called the east

half of the quarter his father's, but there is also proof that he proposed to convey it to his father for life only, and that there was such an arrangement at one time, hence he would naturally call it his father's. The mere fact that his father occupied the east eighty would naturally induce him to speak of it as his father's. Without proof of a consideration paid, this evidence would not establish ownership in appellee.

It cannot be claimed that there is a resulting trust in favor of appellee. First, because the evidence fails to show that any portion of his money was employed in the purchase of the land. Such a trust is never raised unless the money of the *cestui que trust* was used in the purchase of the property in which the trust is claimed to exist. In the next place, a resulting trust cannot be created by a contract or agreement. And the claim in this case is based upon the alleged agreement that one-half of the land should belong to appellee, and that it should be divided after the entry was made and the patent was obtained. If this could be construed into a trust of any kind, it would be an express and not a resulting trust. And if it was such, then the statute of frauds would present a question for consideration.

In this case the statute was set up and is relied upon to defeat a recovery. Then does this case fall within the statute? A sale of real estate may be taken out of the statute, by a payment of the purchase money, being let into possession, and the making of lasting and valuable improvements. While the cases may not all go to the length of requiring all of these acts to constitute such a part performance of the contract as to require a decree for the specific execution of the contract, still we are aware of no well considered case which has dispensed with the payment of the purchase money. This is regarded as essential to take a case out of the operation of the statute. As we have seen in this case there is no evidence, that appellee has paid the purchase money or any part of it for the premises in controversy. This being so, there is no ground for holding that the case is not within the operation of the statute. Even if the contract was proved, which we think is not, as there is not a preponderance in favor of appellee, still there is no evidence that he paid

the purchase money.   There was much evidence, and it is conflicting, as to who made the improvements and paid for them on the eighty in controversy.   It may be inferred that both contributed money and labor, and that the greater portion of the time the house was occupied by both parties as their residence.   In the absence of proof of a sale and payment of the purchase money, or of a resulting trust, we must conclude that appellee contributed to the making of these improvements under some other arrangement, such as the right to occupy until compensated or for a lease for life.

We are of the opinion that the proof fails to sustain the decree, and that it must be reversed and the cause remanded.

*Decree reversed.*