# LAURA SEYMOUR

*v.*

# AMARILLA BELDING.

1. CONTRACT—*can not rest partly in writing and partly in parol.* Where the parties reduce their contract to writing, in the absence of fraud or mistake, the writing must be regarded as embracing the whole of their undertakings, and can not be added to by parol testimony.

2. SAME—*rescission.* Where parents conveyed their residence to their son, taking back a lease, or writing, securing to them a home in the house during their lives,—a privilege never denied them,—the conveyance can not be set aside because of the death of the son, where no fraud was practiced by him.

WRIT OF ERROR to the Circuit Court of Carroll county; the Hon. W. W. HEATON, Judge, presiding.

Mr. LYMAN E. DE WOLF, for the plaintiff in error.

Mr. C. B. SMITH, for the defendant in error.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in chancery, filed by Aaron Belding on the 14th day of July, 1869, to set aside a conveyance made by him and his wife on the 19th day of May, 1866, to his son, Harlow H. Belding, of lot 7, in block 10, in the town of Mount Carroll, in this State, and to compel a conveyance by the defendant in error, Amarilla Belding, the widow of said Harlow H., of the undivided half of the lot, the fee of which was in her at the time of filing the bill. The bill alleges that the real consideration for the deed from Aaron Belding and wife to Harlow H. Belding was the sum of $200, to be paid by Harlow H. to his father, and the support, care and maintenance of the latter and his wife during their natural lives, by Harlow H.; that soon after the execution of the deed, Harlow H. became incapacitated for taking care of his parents, by reason of a paralytic stroke, and, in the following year, removed to his former

home, in Keokuk, Iowa, where he died in March, 1869, having previously had the undivided half of the property conveyed to his wife, the defendant in error, without consideration, and with full knowledge on her part of complainant's equity; that, by reason of the premises, the said agreement of Harlow H. has not been and can not be fulfilled, and the consideration of the deed from complainant and wife to Harlow H. had failed. Upon the final hearing on proofs taken, the circuit court dismissed the bill in January, 1872. On the 2d day of March, 1876, Laura Seymour, the sole surviving child and heir of Aaron Belding, who had deceased since the decree, sued out the writ of error herein to reverse the decree.

The proof shows that, simultaneously with the execution of the deed by Aaron Belding and wife to Harlow H. Belding, there was executed a lease and agreement, by the latter to the two former, purporting to be an indenture between them as parties of the first part and second part, which recited that the party of the first part (Harlow H. Belding), for and in consideration of the deed of conveyance made by the party of the second part (Aaron Belding and Fanny Belding), did thereby lease to the said party of the second part the premises in question during the term of their natural lives, and that of the survivor of them, upon the terms that the party of the first part, with his wife, and the party of the second part, were to have the joint occupancy of the premises, with the understanding that they might reside in the house together as one family, or as two separate families, as they might mutually agree; that there was to be no leasing or sub-letting by either party during the term; that the party of the first part might make any improvements he thought proper, not interfering with the comfort of the other party, closing as follows: " It being the object and purpose of said deed of conveyance and this indenture to secure to said first party the fee simple absolute of said premises—he being the son of said second party—and the full possession of the same after the decease of the second party, and to absolutely indemnify him for such repairs and improvements as he may make and put upon said premises at his own

expense, and at the same time to secure to said second party a home during the remainder of their natural lives, and such care and attention, in their old age, as the party of the first part or his wife may be able to render." Aaron Belding was at the time eighty years of age.

The record shows that it was testified to by Aaron Belding that Harlow H. was to support the former and his wife during their lives, and give Aaron Belding $200 for pocket money, and that plaintiff in error, Laura Seymour, and her husband testified to admissions of Harlow H. Belding to the same effect, made by him to them the day after the execution of the writings; but Aaron Belding admitted that he supposed the life lease above mentioned covered the whole agreement. The attorney who drew up the writings, and was present at the time of their execution, states that, at the request of Aaron Belding, he carefully read the instrument of lease and agreement to him,— a portion of it the second time,—and answered some questions asked about certain clauses; that Aaron Belding finally stated he believed he understood the agreement; that he had, to some extent, explained to witness the arrangement with Harlow H., and that there was not a word said, during the whole conversation, in reference to the support or maintenance of Aaron Belding or his wife by Harlow H.; and had there been any such agreement, the matter of such support and maintenance, we should reasonably suppose, would have been entered upon immediately after the execution of the writings; whereas, the testimony appears to show that each family furnished their own supplies right along. The defendant testifies that, while they lived together as one family, Harlow H. furnished a certain class of supplies; that, in the fore part of August, 1866, they commenced living as two families, each family occupying a part of the house.

But, without further remark in this respect, we are of opinion that the written lease and agreement embodies all that there was of any contract for support and maintenance, or, at least, that it must be taken as so doing, and there is nothing looking to the idea of support and maintenance to be found therein. The

prime object of the arrangement, so far as Aaron Belding and his
wife were concerned, was, to secure to them a home, and evi-
dently nothing further, more than the expectation of such care
and attention as would naturally follow from the son living in
the same house with them. The property, here, was a town
lot and dwelling, only valuable, as would seem, as a residence,
and, as such and a "home," the full use and enjoyment were
secured to the parents, in which they have never been dis-
turbed.

It appears that, before this time, Harlow H. was living at
Keokuk, Iowa; that, under the inducement held out to him
by his father, that he would give him this property if he
would come and live with him, he removed his residence to
Mount Carroll. It appears that, soon after the execution of
the deed, Harlow H. made valuable improvements upon the
premises, including the building of a law office, amounting to
some hundreds of dollars; that, on the 10th of July, 1866, he
was stricken with paralysis, and disabled from attending to
business until in the fall succeeding. After that, although in
feeble health, he seems to have been capable of attending to
ordinary business until some six months before his death. In
May, 1867, he moved back to Keokuk, Iowa, and remained
there, visiting his father occasionally, until his death, which
occurred in March, 1869. The circumstance of the convey-
ance of one undivided half of the lot by Harlow Belding and
wife to one Luther McKean, a brother of the wife, and by the
latter to the wife of Harlow Belding, the defendant herein,
appears to have been as follows: That Harlow Belding was
owing McKean some $2100, in payment of which Mrs. Beld-
ing conveyed to McKean five acres of land, which she owned
in the vicinity of Keokuk, in consideration that Harlow Beld-
ing should convey to her the one undivided half of this lot in
Mount Carroll, and the conveyances were made, in consumma-
tion of that arrangement, April 24, 1867.

On the 20th of May, 1867, Harlow Belding and wife exe-
cuted a deed of conveyance to Aaron Belding of the one
undivided half of the lot, they having, on the 18th of May,

15—83D ILL.

1867, executed to him and his wife a release of the rents and income of the lot, and a grant of full and absolute control of the property, and use of the rents and profits of the same during their natural lives.

The cases of *Frazier* v. *Miller*, 16 Ill. 48, and *Oard* v. *Oard*, 59 id. 46, referred to by counsel for plaintiff in error, where the rescission of contracts of a somewhat similar character was sustained, were quite unlike the present in essential facts. There, the grantor, under an agreement for the future support of himself and wife, conveyed his entire property to the grantee. The grantee, upon obtaining possession of the property, wantonly disregarded his agreement, and, by continued ill-treatment, rendered it impossible to live together, and compelled the grantor and his wife to leave and seek refuge elsewhere. The conduct of the grantees there was such, the court said, as to justify the presumption that the contract was made in the first instance with a fraudulent intent; but we do not consider the facts here as affording ground for the presumption of any such fraudulent intent.

We are of opinion the court decreed rightly in dismissing the bill, and the decree is affirmed.

*Decree affirmed.*