GABRIEL K. WRIGHT *et al.*

*v.*

MATHIAS L. RAFTREE.

*Opinion filed October 19, 1899.*

1. SPECIFIC PERFORMANCE—*oral contract must be clearly established where the Statute of Frauds is pleaded.* In a suit for the specific performance of an oral contract to convey land, where the Statute of Frauds is pleaded, the contract to convey should be clear and unmistakable in its terms, and be established by testimony of an undoubted character by the party seeking to enforce it.

2. EVIDENCE—*when declarations by a party in his own favor are incompetent.* Testimony as to declarations in his own favor, made by a party to an action but not in the presence of the adverse party, is not competent evidence for the former.

3. SAME—*secondary evidence of contents of letter is inadmissible in the absence of proper foundation.* Evidence by a party to a suit as to the contents of a letter written by him to the adverse party is inadmissible, when no notice to produce the original was given.

4. STATUTE OF FRAUDS—*contract relating to land cannot rest partly in parol.* To satisfy the requirement of the Statute of Frauds a contract relating to land must be wholly in writing and cannot rest partly in parol.

5. SAME—*when oral contract to convey land is uncertain.* An oral contract to convey land is uncertain in its terms where no time is specified when the sale is to be completed, payment made, the deed delivered, or from what dates stipulated interest is to run.

6. SAME—*part performance must be under the contract relied upon.* There is not such a part performance of an oral contract for the purchase of land as will take the contract out of the Statute of Frauds, where no purchase money was paid and the acts relied upon

as constituting the part performance were not done under the contract and in performance thereof, but under claim of title derived from another source.

7. SAME—*notice of void oral contract to convey land has no legal force.* A land owner who may, under the Statute of Frauds, lawfully refuse to perform an oral contract to convey, may repudiate the contract by conveying the land to a third party, and the latter is not affected by notice of the prior attempted sale.

8. SAME—*when Statute of Frauds is sufficiently pleaded.* The Statute of Frauds is sufficiently pleaded in a suit to enforce an oral contract for the conveyance of land where the answer avers that the contract is not in writing, and states sufficient facts to show the protection of the statute is sought.

APPEAL from the Circuit Court of DuPage county; the Hon. C. W. UPTON, Judge, presiding.

The original bill in this case was filed June 17, 1892, by the appellee against the appellant, Gabriel K. Wright alone. The bill alleges that, on July 15, 1887, the appellee bought from one Page lots 1 to 68 inclusive in the re-subdivision of block 5 in Stough's second addition to Hinsdale in DuPage county for $3000.00, and received deeds therefor, which were recorded on August 2, 1887; that the deed conveying four of the lots to-wit, lots 47, 48, 49 and 50, was a quit-claim deed, and the deed conveying the balance of the lots was a warranty deed; that the appellee took possession of the premises, and improved the same at an expense of some $12,000.00 by erecting a house and barn, building sidewalks, laying drains, etc.; that in October, 1891, appellee moved into the house, and has since occupied it as a home; that, at the date of such purchase, Oliver J. Stough claimed an interest in said four lots, to-wit, 47, 48, 49 and 50; that, before said purchase was closed, Stough agreed with appellee to sell and convey all his interest in said four lots for $400.00 to be paid by appellee whenever it was convenient for him to do so with interest on said sum of $400.00 at the rate of six per cent per annum. The original bill prays for an injunction, restraining Wright from

entering upon said four lots and interfering with the improvements thereon; and that appellee might be decreed to be the owner thereof; and that Wright might be decreed to convey the same to appellee upon payment of the amount due under the said agreement, etc.

Wright filed an answer to the original bill, denying that appellee bought said four lots from 47 to 50 inclusive, or any of them, from Page, or that appellee ever had any interest in the same, or that appellee ever was in possession thereof, or made any improvements upon said four lots; and, in his answer, Wright sets up, that, on July 15, 1887, Stough was absolute owner in fee of said four lots; that appellee many times tried to purchase said lots of Stough, but failed to do so; and the answer further denies, that Stough ever agreed to sell said four lots to appellee for the sum and upon the terms stated. Wright also sets up in his answer, that he had lately purchased said four lots from said Stough; that said purchase was made for cash; that Wright had the title examined, and found the same good; that no one was then in adverse possession of said lots. By the amendment to his answer Wright pleads the Statute of Frauds, stating that, if there was ever any such agreement between appellee and Stough, it was entirely verbal, and no part of it was in writing, nor was any contract or memorandum thereof in writing ever made; and the answer insists upon the application of the statute.

On October 4, 1897, appellee filed an amended bill, stating therein substantially the same facts as are alleged in the original bill, and stating further, that, in 1891, appellee called on Stough, and told him he was ready to pay the said $400.00 and interest, and asked for a deed, but that Stough postponed the matter, and failed to accept the money, or make the deed. The amended bill also sets up, that, on June 1, 1892, Stough conveyed said four lots to Wright, and that Wright executed a trust deed to one Ballagh to secure certain notes payable to

the order of Stough, claimed to be purchase money notes; that said deed and trust deed were executed in pursuance of a conspiracy, entered into by appellants Stough and Wright to defraud appellee; that appellee is ready and willing to pay to Stough and Wright all the moneys due under said agreement with Stough.    The amended bill prays, that Wright or Stough or both of them may be decreed to convey the said four lots to appellee on payment of the sums found due under said agreement, and that said trust deed may be declared void, and the trustee, Ballagh, be directed to release the same; and that Stough may be made to deliver up and cancel the said notes.

The answer of Stough to the amended bill denies, that the appellee ever purchased the four lots in question of Page, or ever had any interest therein; admits that the appellee is in possession of the other lots, except the four numbered from 47 to 50 inclusive, and has made improvements thereon, but denies that the appellee has ever been in possession of, or made improvements upon, the said four lots; denies that he ever made any such agreement with appellee for the sale of the lots as is set up in the bill, and claims that, on July 15, 1887, he was the absolute owner in fee of said four lots; and that appellee endeavored many times to purchase the same, but failed to do so.    Stough, also, alleges in his answer, that he has sold the four lots to Wright, and was in possession of the same when he made the sale; he denies that, in 1891, or at any other time, appellee offered to pay $400.00 and interest.    The answer denies all the material allegations of the bill, and prays that it may be considered as a demurrer to the bill; avers that he, Stough, "never made any contract or memorandum in writing with the said complainant, or his agents, to sell or convey lots from 47 to 50;   *   *   *   and that said contract, as set forth in said bill of complaint, is contrary to the statute in such case made and provided."

Wright, Stough, Ballagh, trustee, and Samuel Powell, successor in trust, were made defendants to the amended bill, and all answered the same. Replications were filed to the answers; and the case was referred to a master in chancery to take proofs and report. The master reported in favor of granting the prayer of the bill. Exceptions were filed to the report of the master and overruled. Thereupon, the court entered a decree, granting to the appellee the relief prayed in his bill. The present appeal is prosecuted from the decree so entered.

Of the lots, bought from Page by the appellee, those from 1 to 34 inclusive lie east of Stough street in Hinsdale. Lots from 35 to 68 inclusive lie west of Stough street, and constitute a block which is bounded on the east by Stough street, on the west by Jackson street, on the north by Chestnut street, and on the south by Towne place. The four lots in controversy in this suit lie in the south-east corner of the block, and front on Towne place, and run north to an alley which runs east and west through the block. An alley also runs north and south through the block from Chestnut street down to the alley already referred to as running east and west. The east side of lot 47 is on the west side of Stough street, and lots from 35 to 46 inclusive front upon Stough street. The dwelling house and barn, erected by the appellee, are not upon the four lots in question, but are about one hundred and fifty feet north thereof.

WILLIAM JOHNS, and LAWRENCE P. CONOVER, for appellants.

GEORGE M. STEVENS, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The only lots in controversy in this case are the four lots numbered from 47 to 50 inclusive, which lie in the south-east corner of the block embracing lots from 35 to

68 inclusive. The bill was filed by the appellee for the purpose of enforcing the specific performance of an oral contract to sell and convey said four lots, alleged to have been made by the appellant, Stough, with the appellee, Raftree. ·Appellee purchased àll the lots, except the four lots in question, from Benjamin V. Page, and received from Page a warranty deed therefor. It is conceded, that Page had no record title to the four lots in question, although it would appear that he claimed to have been in possession thereof. The appellee, however, took from Page a quit-claim deed of these four lots. The record does not show what title Stough had to the lots in question. Stough introduced in evidence a warranty deed, executed to him by Paul Haag and wife, dated November 13, 1885, and recorded December 1, 1885, conveying to him the four lots in question. It clearly appears, however, that Stough claimed the title to these four lots, and had an interest therein, which appellee deemed it advisable to purchase. Whether Stough had a good title or not, appellee seeks to compel him to make a deed of such title as he had.

If any contract was made by Stough to sell the lots in question to appellee, it was merely a verbal contract.

It is a well settled rule that, where a bill is filed for the specific performance of an oral contract to sell and convey land, the contract must be certain, clear and unambiguous in its terms and in all its parts. When it is vague and uncertain, or the evidence to establish it is insufficient, equity will not enforce it; the terms of it must be mutually binding upon the parties, and based upon a valuable consideration. In order to take a case out of the operation of the Statute of Frauds—which has been pleaded in this case—a parol contract to convey land should be clear and unmistakable in its terms, and should be established by testimony of an undoubted character. The contract must not only be clear, definite, and unequivocal in its terms, but it must be established by com-

petent proof, and the burden of proof is upon the party seeking to enforce it. (*Pond* v. *Sheean*, 132 Ill. 312; *Tink* v. *Walker*, 148 id. 234; *Geer* v. *Goudy*, 174 id. 514).

It makes no difference what has been done in part performance of an alleged oral contract to sell land, if it is not first shown that such a contract exists. The evidence in the present case does not show clearly, that the oral contract sought to be enforced was ever made.

The appellee swears that, some time in the summer of 1887, between July 15, 1887, and August 2, 1887, the appellant, Stough, agreed to sell him the four lots in question for $400.00, to be paid whenever appellee should find it convenient to do so, with interest at the rate of six per cent per annum. The appellant, Stough, swears that he never made any agreement with the appellee to sell him his interest in the lots in question. Stough swears that he offered to sell the lots to appellee, but that appellee never accepted his offer, or promised to pay him any money. The only testimony besides that of appellee and Stough is the testimony of H. C. Middaugh and the appellant, James H. Ballagh. Middaugh, who appears to have been an agent or representative of the appellee, swears that appellee told him that Stough had agreed to sell the lots to appellee for $400.00. The declarations of appellee, thus testified to by Middaugh, were not made in the presence of the appellant, Stough, or of the appellant, Wright, and, therefore, were not competent evidence, and should not have been admitted. (*Geer* v. *Goudy, supra*). The testimony of Ballagh, who appears to have been an agent of Stough, tends somewhat to confirm Stough's statements. Ballagh swears that, in the fall of 1890, long after the oral contract is alleged to have been made, Raftree told him that he had long before that had some talk with Stough about buying the lots in question, but that such talk had amounted to nothing, and that he wanted to make to Stough another proposition for their purchase. Ballagh further says, that appellee did then make him a

proposition for the purchase of the lots, and that he submitted the same to Stough, but that Stough declined to accept it.

If a valid contract was made for the sale of the lots in July or August, 1887, it is singular that the appellee should have made a proposition for their purchase in 1890. It is manifest, from the statement thus made of the proof as to the making of the contract, that the existence of any such contract is not clearly established. It is supported by the testimony of the appellee alone, because the testimony of Middaugh was, as has already been stated, incompetent, and mere hearsay. The making of the contract is denied by the appellant, Stough, and the testimony of Ballagh confirms that of Stough. We are, therefore, obliged to conclude, that the court below erred in finding that the oral agreement, set up in the original and amended bills, was established by the proof in the case.

Appellee contends, however, not only that the agreement of sale, as set up in his bill, was made, but that it was in writing. This contention is based upon certain letters written by Stough to the appellee, which were introduced in evidence. In the first of these letters, dated September 3, 1887, Stough says to appellee: "I am liable to have to go west any day now. Do you want to say anything more to me about block 5 before I go?" Again, in a letter written by Stough to appellee, dated September 6, 1887, he says: "Yours at hand. My object in writing was that any day I am liable to be off for Cal., to be back next May or June, and it occurred to me that you might want it done before I went. I am satisfied to wait. What is the price of your place? I might find you a buyer among my many callers." On November 7, 1887, Stough says: "Will buy your house, half cash half lots, if you use the cash to build at Stough. Will lend you the money to build at Stough. Will let you sell lots at Stough at big commission." These are the only letters

written by Stough and relied upon as written evidence
of the contract. There is nothing in these letters incon-
sistent with the statement of Stough, that he offered to
sell the lots to Raftree, but that Raftree never accepted
his offer, or offered to pay him any money. The appel-
lee swears, and the theory of his bill is, that the oral
contract was made in July or in August, 1887. The let-
ters introduced certainly show that some negotiation,
which had been going on between the parties, was in-
complete as late as September, 1887. It is proven that
Stough was a large owner of lots in Hinsdale, and was
engaged in selling his own lots. It, also, appears, that,
in 1889, he left Chicago and Hinsdale, and went to Cali-
fornia, being at the time more than seventy years of age.
Appellee owned a house upon Lincoln street in Hinsdale,
which he desired to sell with a view to building a new
house upon the lots purchased from Page. Stough offers
in one of the letters to sell this house for appellee, and
in another to buy it from him, and offers, also, to lend
him money to build his new house. The new house was
not built upon the four lots in question, but upon other
lots upon the west side of Stough street, which had been
purchased from Page. The letters do not establish any
such contract as is set up by appellee, but are entirely
consistent with the theory of the appellants. Appellee
seeks to support his contention as to a written contract
by stating the contents of a letter, which he claims to
have written to Stough in answer to the latter's letter
of September 3, 1887. But this testimony as to the con-
tents of his own letter was incompetent, as no notice was
given to the appellants to produce the original of the
letter written by the appellee; and, therefore, no proper
foundation was laid for proving its contents by parol.
It is not claimed, that the whole of the contract, alleged
to have been made, was in writing, but the portions
thereof, which were claimed to be embodied in writing,
were sought to be added to, and made complete, by oral

testimony. It is, however, a well settled rule, that "the entire contract must be in writing to satisfy the statute; it will not be sufficient that the greater part of the contract is in writing; it must all be in writing." (*Cloud* v. *Greasley*, 125 Ill. 313). "The contract itself cannot be partly in writing and partly in parol." (*Farwell* v. *Lowther*, 18 Ill. 252; *Lane* v. *Sharpe*, 3 Scam. 566; *Seymour* v. *Belding*, 83 Ill. 222).

The oral contract in question is not only not established by sufficient proof, but, if it were proven, it is indefinite and uncertain in its terms, as they are set up in the bill, and sworn to in the testimony of the appellee. According to the terms of the contract, no time was specified when the sale was to be completed, or the deed to the lots was to be delivered. Appellee says, that Stough agreed to allow him to pay the money whenever it should suit his convenience to do so. Appellee says, that he was to pay interest at the rate of six per cent, but it does not appear from what date the running of the interest was to begin, or at what date it was to end. (*Farwell* v. *Lowther*, *supra;* Story's Eq. Jur. sec. 764).

Even, however, if there was such an oral contract as the appellee insists upon, the Statute of Frauds is set up in the answers, and, as that statute requires all contracts for the transfer of land to be in writing, the statute is applicable, unless such acts of part performance under the contract are shown as take it out of the statute. We have frequently decided that an oral sale of real estate may be taken out of the Statute of Frauds "by a payment of the purchase money, being let into possession, and the making of lasting and valuable improvements." (*Holmes* v. *Holmes*, 44 Ill. 168; *Ferbrache* v. *Ferbrache*, 110 id. 210; *Pond* v. *Sheean*, 132 id. 312). In *Holmes* v. *Holmes*, *supra*, we said: "While the cases may not all go to the length of requiring all of these acts to constitute such a part performance of the contract, as to require a decree for the specific execution of the contract, still we are aware

of no well considered case which has dispensed with the payment of the purchase money. This is regarded as essential to take a case out of the operation of the statute." Where a promise is made by a parent to a child to convey land, the rule requiring payment of the purchase price is sometimes relaxed. (*Bright* v. *Bright*, 41 Ill. 97). But, in such case, the relationship of the parties constitutes a sufficient consideration. Here, however, no such relationship existed; the contract, according to appellee's contention, was purely and simply an oral contract for the sale of land; and the evidence is clear that no part of the purchase money was paid or tendered.

Next to the payment of the purchase money, the other acts of part performance, which take the contract out of the Statute of Frauds, are the taking of possession, and the making of lasting and valuable improvements. But the rule in regard to the taking of possession is, that possession must be taken under the contract, and in performance of the contract. The improvements also must be made under the contract of purchase, and not otherwise. It is well settled, that the acts relied on to show part performance will not operate to defeat the Statute of Frauds, unless they are done under the contract itself, and for the purpose of performing it. (*Wood* v. *Thornly*, 58 Ill. 464; *Clark* v. *Clark*, 122 id. 388; *Pond* v. *Sheean, supra; Cloud* v. *Greasley, supra*). In the case at bar, there was a fence which enclosed the lots when appellee made his purchase from Page. Page had previously made a lease of all of the thirty-four lots, constituting the block, to one Anderson. Appellee took a quit-claim deed of these four lots from Page, and swears—and the other testimony shows—that he entered into possession under Page and under the quit-claim deed which he received from Page, and not under any oral contract made with Stough, or for the purpose of performing such oral contract.

It appears that the block already referred to consisting of the thirty-four lots from 35 to 68 inclusive, was an

irregular and uneven piece of ground. There was something like a hill, and there were other elevations, at the point north of these four lots, where appellee subsequently built his house and barn and chicken-house. He was obliged to level this hill or these elevations, in order to make the improvements mentioned. There was a ravine or gully, not deeper in any one place than three or four feet, running across a part of these four lots in the south-east corner of the block, and south of the alley. Some of the dirt, obtained from leveling the hill or elevations, was placed in the ravine or gully referred to. This disposition of the dirt, however, was as much for the convenience of the appellee in leveling the ground where his houses were built, as it was an improvement of the four lots in question. Appellee also put in some tiles and drains, which extended from the lots, on which his houses were built, down to the four lots in question; but these drains were more for the convenience and improvement of the lots north of the alley, than of those lots which were south of the alley. It is said, also, that the appellee built a sidewalk in front of these lots, and leveled the street in front thereof, but this was for his own convenience in going from his home to the depot which is situated to the south of these four lots. It, also, appears that the appellee used these lots for pasturing purposes. We do not deem it necessary to decide whether the filling in of this ravine, and the putting in of these drains, and the building of the sidewalk, constituted such valuable and lasting improvements, as the authorities hold to be necessary, in connection with the payment of the purchase money and the taking of possession, to show such acts of performance as will take the contract out of the operation of the Statute of Frauds. We are satisfied, not only that no purchase money was paid, but that no possession was taken and no improvements were made under this contract and in performance of it. Even if, therefore, there was a contract, it is not clear that

there were such acts of part performance as take it out of the statute.

.   In view of what is said, it makes no difference whether Wright, who purchased the lots from Stough, had notice of the contract or not.   The evidence tends to show that he had no such notice.   But, if he did have such notice, the law is that notice, actual or constructive, of a contract which is void under the Statute of Frauds, will not prevent the person, having such notice, from becoming a purchaser of the property from the original owner. Where the owner may lawfully refuse to perform a contract, he may lawfully sell and convey to another, and, by so doing, repudiate the contract; and a purchaser from him will not be affected by the prior sale, rendered void by the Statute of Frauds. (*VanCloostere* v. *Logan*, 149 Ill. 588).

It is objected by the appellee, that the Statute of Frauds is not properly pleaded in the answers filed by appellants below.   This objection is without force.   One of the answers expressly refers in terms to the Statute of Frauds as such; and the other pleads it in the language set forth in the statement preceding this opinion. The averments here are regarded as sufficient.   "In pleading the Statute of Frauds an express reference to the statute by its title or otherwise is not necessary.   * * * But sufficient facts should be stated to show that the defendant seeks the protection of the statute.   And the plea or answer setting up the statute should expressly aver that the contract was not in writing, else it will be presumed to be so."   (9 Ency. of Pl. & Pr. pp. 713-715). Here, the answers aver, that the contract was not in writing, and state sufficient facts to show that the protection of the statute is sought.

The decree of the circuit court is reversed, and the cause is remanded to that court with instructions to proceed in accordance with the views herein expressed.

*Reversed and remanded.*