# Campbell Investment Company, Appellant, v. George H. Taylor, Appellee.

## Gen. No. 31,643.

1. CONTRACTS—*performance of condition precedent as necessary to offer being binding.* Where one represents that he owns a lease that he can assign to an intending purchaser and that subletting by the purchaser will be profitable if he will expend a sum for remodeling the building, and a letter from the alleged owner of the lease states that he will assign the lease in the event the purchaser and his associate underwrite the amount required for remodeling, consummation of the underwriting is a condition precedent to the making of a binding contract and there is no unilateral or bilateral contract even by acceptance of the alleged offer, there being no underwriting.

2. CONTRACTS—*performance of promise as essential to making of contract.* If one offers to be bound if another will do something, a contract may arise when the thing is done, but will not arise upon a mere promise to do it.

3. FRAUDS, STATUTE OF—*substance of contract to be stated in memorandum.* In order to take a contract out of the statute of frauds, the memorandum must express with reasonable certainty, either by its own terms or by reference to some other writing, the substance of the contract.

4. FRAUDS, STATUTE OF—*substance of contract insufficiently stated in memorandum.* Where one orally represents that he owns a lease on a named building that he can assign to an intending purchaser and that subletting by the purchaser will be profitable if he will expend a sum for remodeling the building, a letter from the alleged owner of the lease that he will assign the lease in the event the purchaser underwrite the amount required for remodeling the building held not a sufficient memorandum of the substance of the contract required by the statute of frauds, in not sufficiently stating what property is involved nor the substance of the undertaking.

5. CONTRACTS—*right to withdraw offer.* An offer of a unilateral contract may be withdrawn by the offerer at any time prior to completion of performance by the offeree.

Appeal by plaintiff from the Superior Court of Cook county; the Hon. JOSEPH B. DAVID, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1927. Affirmed. Opinion filed November 23, 1927.

A. W. MARTIN and EDWARD H. S. MARTIN, for appellant.

TAYLOR, MILLER, BUSCH & BOYDEN, for appellee; ORVILLE J. TAYLOR, of counsel.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

This is an appeal by the plaintiff, Campbell Investment Company, a corporation, from a judgment in the superior court in favor of the defendant, George H. Taylor in an action of trespass on the case on promises.

The issue in the trial court was precipitated by a declaration and demurrers thereto, and the demurrers being sustained, the question arises here, upon review, whether the declaration states a good cause of action.

The declaration contains eight counts. In the view we take of the case, however, it is necessary to consider only the first. It is therein alleged that

defendant, on November 19, 1919, at Chicago, represented to the plaintiff that he, the defendant, had a certain lease whereby the Chicago, Burlington and Quincy Railroad Company, leased to the defendant for the term of five years, beginning May 1, 1930, with the privilege to make alterations at any time before the beginning of the term, certain premises, in Cook County known as the Burlington building, at the northeast corner of West Adams and South Franklin streets, Chicago, at an annual rental of $35,000, and that the lease could be by the defendant assigned to the plaintiff or to whomsoever the plaintiff might designate, and that by the expenditure of the sum of $150,000 for alterations, remodeling and repairing, the premises could be sublet for the term by the plaintiff, or by whomsoever the plaintiff might designate, to good and responsible tenants, for large sums of money as rent, amounting to at least $150,000 per year, and that said rentals so to be paid by the subtenants would be sufficient to pay the rent of $35,000 per year, to the Chicago Burlington & Quincy Railroad Company, the expense of managing and operating the premises, the expense of keeping the building in good order and repair, to repay the $150,000 to be spent for alterations, remodeling and repairing, and, also, to pay a net profit during the term of at least $35,000 per year, or a net profit for five years of $175,000.

It is further alleged that afterwards, on, to-wit, the 1st day of December, A. D. 1919, the defendant made to the plaintiff an offer in writing concerning the assignment of said lease, which offer was and is in words and figures, as follows:

"Chicago, Dec. 1, 1919.

"Campbell Investment Company,

"230 South LaSalle Street,

"Chicago, Illinois.

"Dear Sirs: In the event you and your associates underwrite the amount required to remodel the Burling-

ton building, we will in addition to assigning the leases to be entered into with the various tenants, also assign the lease between the Chicago, Burlington and Quincy Railroad Company and ourselves, the purpose being to enable the underwriters to take immediate possession of the property in case of default in payment of the notes as they become due.

"Very truly yours,

"George H. Taylor."

That, being desirous of procuring a lease of premises of which it could use a portion for its own offices in which to conduct and carry on its business and affairs, and a portion of which it could sub-let at a profit, the plaintiff went to great trouble and expense, to-wit: expense of Twenty-five Hundred Dollars in arranging for the underwriting of said amount required to remodel said Burlington Building, and arranged for the said underwriting by the plaintiff and its associates, and afterwards, on, to-wit: the 2nd day of January, A. D. 1920, and before the defendant ever withdrew or rescinded the offer last aforesaid, orally accepted the said offer and orally gave notice of such acceptance to the defendant, whereupon the defendant requested the plaintiff to allow the matter to rest for a few days until arrangements could be made, and, afterwards, on, to-wit: the 22nd day of January, A. D. 1920, the defendant notified the plaintiff that the defendant had no lease of said premises and that the Chicago, Burlington & Quincy Railroad Company would not execute any lease thereof to the defendant, and that it would be impossible for the defendant to procure any such lease; and the plaintiff avers that during all the period of time from the time of the aforesaid acceptance of said offer until the time of such notification last aforesaid by the defendant, the plaintiff and its associates stood ready and willing to carry out and perform the said contract so created by such acceptance of the defendant's said written of-

fer and to underwrite and pay the money so required to remodel said Burlington building; but, nevertheless, the defendant, though often requested, has hitherto wholly failed and refused and still does fail and refuse to assign any such lease as he so agreed and promised to do; that as a result, the defendant became liable to pay to the plaintiff the difference between the value of the five-year leasehold interest and the total of the alleged rent under the lease between the Chicago, Burlington & Quincy Railroad Company and the defendant, and the expense of altering and managing the premises, that is, $200,000; that although the defendant undertook and promised to pay, and the plaintiff has often requested, it still refuses to pay.

It may well be, at first blush, considering the so-called representations of November, 1919, the writing by the defendant of December 1, the statement that the plaintiff spent $2,500 in arranging for the underwriting, and the alleged orally accepted offer, that one would be inclined to conclude that a binding contract of some kind had been made. But upon analysis, considering the necessary elements, which the law prescribes as essential to the making of a contract, it seems impossible to find in all the allegations of the declaration sufficient to make out a binding contract.

For the plaintiff, it is claimed that the alleged written offer of December 1, together with the statement that it orally accepted said offer and gave notice of such acceptance to the defendant, brought into being an implied and enforceable contract, for the breach of which it is entitled to damages.

It cannot be claimed, reasonably, that the representations by the defendant, alleged to have been made on November 19, to the effect that the defendant had a five-year lease at an annual rental of $35,000 from the railroad company, which could be assigned to the plaintiff, or whomsoever the plaintiff might designate, and that by the expenditure of $150,000 for alterations,

the property would be sublet for the term, either by the plaintiff or anyone it designated, for at least $150,000 a year, which would result in a net profit, under the five-year term of the lease, of $35,000 a year, constituted anything more than information given by the defendant to the plaintiff as to the status of the defendant in connection with a piece of real estate and its opinion as to what might be done with it under a certain lease; in other words, those representations did not become in any way, or constitute part of any contractual relations between the defendant and the plaintiff, that is, they bear no legal relationship to the writing of December 1. It is not alleged in the declaration that the plaintiff was influenced by them or acted by reason of them, or in any way relied upon them. It follows, therefore, that the sole cause of action that the plaintiff undertakes to state in its declaration is made up of (1) the document of December 1; (2) the statement that it "went to great trouble and expense, to-wit, the expense of $2,500.00 arranging for the underwriting of said amount required to remodel said Burlington building, and arranged for the said underwriting;" (3) that the plaintiff before the defendant withdrew the offer last aforesaid, orally accepted the said offer and orally gave notice of such acceptance to the defendant, whereupon the defendant requested the plaintiff to allow the matter to rest for a few days until arrangements could be made; and (4) that the defendant on January 22, notified the plaintiff that he had no lease to the property, and the railroad company would not execute one to him, and that it would be impossible for him to procure any such lease.

The document of December 1, provides that the defendant should assign the lease between the railroad company and the defendant in addition to assigning the leases to be entered into with the various tenants, "in the event you and your associates underwrite the

amount required to remodel the Burlington Building.''
The ideas expressed in the document are not sufficient,
in and of themselves, to constitute a fully intelligible
and complete offer of any kind.   Quite obviously, the
document was written with a view to considering mat-
ters that had transpired between the parties prior
thereto.   But even if it be taken as an intelligent offer
of something, it expressly provided that it could be
accepted only by the plaintiff and its associates ac-
tually underwriting the amount required to remodel
the Burlington building.   Until the plaintiff had con-
summated the underwriting, the offer, whatever it was,
remained unaccepted.   Nor could the offer be trans-
muted into part of a binding contract by any act on
the part of the plaintiff in the nature of an oral ac-
ceptance.   The statement by the plaintiff that he would
accept the offer was of no legal effect.   The plaintiff
could not change the terms of the offer.   Here the de-
fendant, by the express terms of the document itself,
provided that a binding contract could come into be-
ing only when the plaintiff and his associates had ac-
complished the underwriting; in other words, the un-
derwriting was a condition precedent, *sine qua non*.
The offer could not be transmuted into a binding obli-
gation until the amount specified had been underwrit-
ten.   The allegation, therefore, of oral acceptance was
of no avail.   If one offers to be bound if another will
do something, a contract may arise when the thing is
done, but will not upon a mere promise to do it.   The
allegations of the declaration do not go far enough,
in our judgment, to make out a contract, either
unilateral or bilateral.   It is argued for the plaintiff
that the defendant's offer was unilateral up to the time
of its oral acceptance, but after the oral acceptance it
became a bilateral contract.   In the view we take of it,
however, there could be no oral acceptance, inasmuch
as the offer was capable of being accepted only by

doing something, that is, consummating the underwriting.

Further, even if we assume that the allegations of the declaration make out a contract, in our judgment, the contract would not comply with the requirements of the statute of frauds. The writing itself, that is, the letter of December 1, does not sufficiently state what property is involved; nor what is the substance of the understanding of the alleged agreement. In fact, it is dubious as to the parties, the property, the price, and the substance, that is, as to what may be considered as the intended function of the agreement, and what it is to accomplish. In order to take a contract out of the statute of frauds, the memorandum must express with reasonable certainty, either by its own terms or by reference to some other writing, the substance of the contract. The most that can be made of the memorandum is that it was merely what might be called an intermediate statement of facts, constituting part of negotiations presumably anticipatory to the making of a prospective agreement; it was all *in fieri*. *Scott v. Fowler*, 227 Ill. 104.

In *Dreiske v. Eisendrath Co.*, 314 Ill. 199, the court said:

"Not only are the terms of the offer and acceptance indefinite, but there are also wanting from them many of the details which would necessarily be involved in the conveyance of the property, and from the absence of such terms we must conclude that it was not the intention of the parties that the letters, alone, should constitute the entire contract, but that they did intend to have a subsequent meeting and negotiations, at which all the details should be settled and a definite contract drawn and properly executed by all parties."

In *Frazer v. Howe*, 106 Ill. 563, 574, the court said:

"The writing, to meet the requirement of the statute, need not give all the details, but it must express the substance of the contract with reasonable cer-

tainty, either by its own terms or by reference to some other agreement or matter from which it can be ascertained with like reasonable certainty. (*Atwood v. Cobb*, 16 Pick. 227; *Ives v. Hazard*, 4 R. I. 29; *Meadows v. Meadows*, 3 McCord, 458.) The contract cannot rest partly in writing and partly in parol. (*Seymour v. Belding*, 83 Ill. 222; *Weaver v. Fries*, 85 id. 356.)''

Also, if the memorandum be considered as containing an offer of a unilateral contract—and we have already stated above that the allegations do not set up a bilateral contract—then, as such (an offer may be withdrawn by the offerer at any time prior to completion of performance by the offeree) and as here it is alleged it was withdrawn, the declaration is insufficient. Williston on Contracts, Vol. 1, sec. 60, page 100; *Plumb v. Campbell*, 129 Ill. 101. In the *Plumb* case the court approved the following language from Parsons on Contracts.

''The party making the promise is bound to nothing until the promisee, within a reasonable time, engages to do *or else does or begins to do,* the thing which is the condition of the first promise. Until such engagement *or such doing,* the promisor may withdraw his promise, because there is no mutuality and therefore no consideration for it.'' Although it is the law that a contract should be construed and interpreted so as, if reasonably possible, to make it valid and enforceable, and that its language should be construed and interpreted most strongly against the party signing the instrument (*Field v. Leiter*, 118 Ill. 17), we are of the opinion, for the reasons stated above, that the allegations in the declaration fail to make out a cause of action.

The judgment, therefore, will be affirmed.

*Affirmed.*

HOLDOM and WILSON, JJ., concur.