## A. T. Washburn, Appellee, v. The Hoxide Institute, Appellant.

### Gen. No. 8,163.

January 25, 1928.

Opinion filed

Hogan & Reese, W. S. Greer and John W. Coale, for appellant.

J. A. Merry, for appellee.

Mr. Justice Eldredge delivered the opinion of the court.

The present case is an action in assumpsit, wherein on a trial before the court without a jury appellee recovered a judgment against appellant for the sum of

$2,336.67. It is conceded that if there is any liability at all, that the amount of the judgment is correct. The declaration consists of the common counts only, and the trial was had upon the theory of appellee that he was entitled to recover, as liquidated damages, the amount alleged to be due him for unpaid salary, in accordance with the terms of a special contract with appellant. No evidence was introduced under the *quantum meruit* count, and the integrity of the judgment depends upon the validity of the special contract.

Prior to June 22, 1925, H. T. Morphy, Harry M. Hoxsey and S. A. Person had established in the city of Taylorville, Illinois, a sanitarium known as the Hoxide Sanitarium, an institution devoted to the treatment of patients afflicted with cancer. The institution at that time was unincorporated, and the record is silent as to how it was owned and operated by the three persons above named, but presumptively they were partners, though they styled themselves as trustees. On the day above mentioned a written contract was executed by said Morphy, Hoxsey and Person, as parties of the first part, and by appellee, as party of the second part:

"This agreement by and between the Hoxide Sanitarium Trustees of Taylorville, Illinois, party of the first part, and A. T. Washburn, M. D., 4016 North Hermitage Ave., Chicago, Illinois, party of the second part, witnesseth:

"That the party of the first part hereby agrees to employ A. T. Washburn, M. D., as General Medical Superintendent of the Hoxide Sanitarium, party of the second part, to devote his time to the institution exclusively for a period of ten years from the date of this agreement.

"That the party of the first part hereby agrees to pay the party of the second part THREE HUNDRED DOLLARS ($300.00) per month for a period of six months, and to increase the payments at the rate of

Fifty Dollars ($50.00) a month for each six month period thereafter until the end of the fourth year when an increase at the rate of ONE THOUSAND DOLLARS ($1000.00) per year, thereafter, is to be paid.

"That the party of the first part hereby agrees to issue to the party of the second part ONE HUNDRED beneficial interests in the National Cancer Research Institute and Clinic, at the time of signing this agreement.

"In the event that A. T. Washburn, M. D., desires to resign in six months, he agrees to return the above beneficial interests.

"This agreement to be effective from July 1st, A. D. 1925.

> H. T. MORPHY,
> HARRY M. HOXSEY,
> S. A. PERSON,
> Party of the First Part.
> A. T. WASHBURN, M. D.
> Party of the Second Part."

Appellee entered upon his duties as general medical superintendent of the Hoxide Sanitarium July 1, 1925, and continued therein until November 10, 1925, at which time Morphy, Hoxsey, Person and several other individuals caused to be incorporated "The Hoxide Institute" of which Morphy became president, Person, secretary, and Hoxsey, vice president. Appellee testified that on or about November 20, 1925, he had the following conversation with Morphy, the president: "I went to Morphy and asked him if it would be necessary to have a new agreement for my services with the corporation, and he said no, to continue on the agreement that I had with the trustees; he said it would not be necessary that they change it." Appellee continued to render service to the Hoxide Institute until December 1, 1926, when he severed his relations therewith. The written agreement entered into by appellee and the individuals, or so-called trustees, and the con-

versation with Morphy above noted, it is claimed by appellee, constituted a valid contract between him and the corporation. A contract for employment extending over one year, under the statute of frauds, Cahill's St. ch. 59, ¶ 1, must be in writing. This purported contract rests partly upon a written agreement and partly in parol, and must be treated as a parol contract in determining whether it is within the inhibition of the statute of frauds, Cahill's St. ch. 59, ¶ 1. *Hartenbower v. Uden,* 242 Ill. 434; *Elwell v. Hicks,* 238 Ill. 170; *Farwell v. Lowther,* 18 Ill. 252; *Wright v. Raftree,* 181 Ill. 464; *Cloud v. Greasley,* 125 Ill. 313.

In the case of *Wright v. Raftree, supra,* it was said: "It is not claimed, that the whole of the contract, alleged to have been made, was in writing, but the portions thereof, which were claimed to be embodied in writing, were sought to be added to, and made complete, by oral testimony. It is, however, a well settled rule, that 'the entire contract must be in writing to satisfy the statute; it will not be sufficient that the greater part of the contract is in writing; it must all be in writing.' (*Cloud v. Greasley,* 125 Ill. 313.) 'The contract itself cannot be partly in writing and partly in parol.' (*Farwell v. Lowther,* 18 Ill. 252; *Lane v. Sharpe,* 3 Scam. 566; *Seymour v. Belding,* 83 Ill. 222.)''

No by-laws of the corporation were introduced in evidence showing that Morphy, as president thereof, had any power to make such contracts on its behalf, hence if any such power existed it must have been one implied by law as pertaining to the usual and customary duties of the president of a corporation. If it be conceded that it was one of the implied powers of Morphy, as president, to enter into a contract of employment with appellee, yet it has been universally held that in such case the time of employment must be reasonable. In the case of *Laird v. Michigan Lubricator Co.,* 153 Mich. 52, a contract of employment had been made for a term of service for three years, at

a compensation of $1,500 per year on behalf of the corporation by the secretary-treasurer and manager of the corporation. It was held:

"It would seem clear that in the absence of any evidence of custom or any holding out as possessed of authority other than the bare fact that he was secretary-treasurer and manager, the authority to continue employment not only beyond his term of office but beyond the period during which the entire management of the affairs of the company might be changed by the election of a new board of directors, would not be implied." In this opinion the court cites with approval what was said in the case of *Camacho v. Hamilton Bank Note & Engraving Co.*, 2 App. Div. 369, 37 N. Y. Supp. 725, as follows: "But no presumption of law can be indulged in that, because a person acts as such a manager, he has the power to bind his principal to contracts of an extraordinary nature, and of such a character as would involve the corporation in enormous obligations and for long periods of time. If a general manager, simply by virtue of his being charged with the ordinary conduct of the business, would have the right to bind his principal to a contract for service for three years, involving the obligation to pay thousands of dollars of salary to an employe why may not that power extend indefinitely so that he may make contracts for all employes for indefinite periods, and thus assume to himself a power which it cannot be supposed was ever intended to be lodged in him?" So also in the case of *Caldwell v. Mutual Reserve Fund Life Ass'n*, 53 App. Div. 245, 65 N. Y. Supp. 826, it was held in a case where the plaintiff sought to recover fees and commissions claimed by virtue of a contract executed by the vice president, a member of the executive committee of said company, in its behalf, providing for employment and compensation for a period of 10 years, that the vice president exceeded his authority and acted in excess of his power

in creating such a charge upon the corporation. The alleged contract relied upon by appellee in this case covers a period of employment for 10 years with a large increase of salary every six months for the first four years and an increase of $1,000 each year for the balance of the term, so that at the expiration of the contract, under the terms thereof, appellee would be receiving in excess of $12,000 per year. There is no evidence in this case that such a contract was ever ratified by the corporation and we are of the opinion that if Morphy, as president, had any implied power to make a contract of this character at all, he exceeded such power in attempting to bind appellant with such a burden extending over such a long period of years.

For the reasons therefore that the alleged contract was void under the statute of frauds, Cahill's St. ch. 59, ¶ 1, and that the president had no implied authority to make it, the judgment is reversed and the cause remanded.

*Reversed and remanded.*