Edward S. Perry, Plaintiff-Appellee, v. Nevin Hotel Company, Defendant-Appellant.

Gen. No. 9,799.

Opinion filed November 14, 1952. Rehearing denied January 23, 1953. Released for publication January 23, 1953.

SEARS & STREIT, of Chicago, and CHARLES G. BRIGGLE, JR., of Springfield, for appellant; BARNABAS F. SEARS, and DAVID H. ARMSTRONG, both of Chicago, of counsel.

GILLESPIE, BURKE & GILLESPIE, of Springfield, for appellee; HUGH J. DOBBS, and LOUIS F. GILLESPIE, both of Springfield, of counsel.

MR. PRESIDING JUSTICE WHEAT delivered the opinion of the court.

Defendant, Nevin Hotel Company, an Illinois corporation, appeals from judgments of the circuit court of Sangamon county, entered on verdicts for plaintiff in the amount of $11,000 and $1,602, respectively, returned in an action for damages resulting from termination of an alleged employment contract and for three months' salary under the contract.

Count I of the complaint alleged, and defendant by its answer, admitted that on May 15, 1947, plaintiff and one John B. Nevin, hereinafter referred to as Nevin, entered into a written agreement whereby he em-

ployed plaintiff as manager of the Leland Hotel in Springfield, Illinois, at a yearly salary of $11,000 plus expenses and quarters, commencing upon the date when Nevin, or any corporation formed by him, should take over the hotel; that defendant was incorporated on August 6, 1947, disposed of the hotel on September 1, 1948, and on October 8, 1948, notified plaintiff that his employment was terminated.

It was further alleged but denied by defendant that pursuant to the above mentioned agreement, plaintiff entered into the employ of defendant and continued therein from August 26, 1947, to October 8, 1948, and performed all terms and conditions of the above mentioned agreement, the substance of which appears from the record to be as follows:

"This agreement made this 15th day of May, 1947, between John B. Nevin . . . hereinafter called Owner, and Edward S. Perry . . . hereinafter called Manager, witnesseth:

Whereas, the Owner has entered into a contract for the purchase of the Leland Hotel at Springfield, Illinois, and proposes to operate the same, either as an individual or by a corporation organized for that purpose, to be controlled by Owner; and

Whereas, Manager has managed and operated the Leland Hotel for the past twenty-five years; and

Whereas, the Owner desires to employ said Manager to continue as manager of said Leland Hotel for himself, individually or the corporation if and when organized by him, to operate said hotel as aforesaid;

Now, therefore, for and in consideration of the premises and the acceptance of this agreement by Manager, it is mutually agreed as follows:

1. In case Owner elects not to organize a corporation to own or operate said hotel, the provisions of this agreement shall extend and apply to him in case

25

he operates the same as an individual, or to any trustee or other entity which may operate the same, directly or indirectly, for him or in his behalf; . . .

8. Manager shall devote his time and best energies to the management of said hotel and shall be subject in all things to the supervision of Owner, or to any corporation organized and controlled by him for the purpose of operating said hotel, or to any trustee or other entity which may operate the same, directly or indirectly, for him or in his behalf as the case may be;

9. This contract of employment of Manager shall be for a period of five years commencing upon the date that said Owner or any corporation formed by him takes possession and control of the Leland Hotel;

10. If during the term of this contract Owner sells or otherwise disposes of said hotel, other than to a corporation organized and controlled by him for the purpose of owning or operating said hotel, or to a trustee or other entity to own or operate the same for him or in his behalf, he may terminate this agreement on payment to Manager of one year's compensation from the date of termination;

11. Owner agrees that this contract shall be ratified, approved and accepted by any corporation formed by him for the purpose of operating said hotel, or by any trustee or other entity or business unit which may operate the same, directly or indirectly, for him or in his behalf.''

In addition to the foregoing, the agreement in question gave to plaintiff general powers of management, provided for his compensation as alleged in the complaint and for additional compensation to be agreed upon by the parties, in the event the management acquired additional hotel property.

Count I further alleged that defendant ratified and adopted the foregoing agreement and assumed the ob-

26

ligations therein imposed upon Nevin by acceptance of and payment for services rendered by plaintiff after defendant's incorporation, that defendant, upon notifying plaintiff of his discharge, did not tender one year's compensation as provided in the foregoing agreement and prayed judgment for $25,000.

Count II of the complaint further alleged defendant's refusal to pay plaintiff's salary, pursuant to the terms of the foregoing agreement, for the months of August, September and October, 1948, and prayed judgment for $3,000.

Defendant's answer denied that it had ratified and adopted the foregoing employment agreement and as separate affirmative defenses, set up the statute of frauds; lack of consideration between plaintiff and defendant; termination of the agreement, as one for personal services, upon the death of Nevin; and further alleged that any acts of Nevin claimed to bind the corporation were his individual acts and not those of defendant.

Plaintiff's motion to strike the foregoing affirmative defenses was granted and defendant filed an amended answer alleging in part substantially the same defenses as set out above, which were stricken on plaintiff's motion.

The following additional pertinent facts are undisputed. About May 1, 1947, Nevin, a man of no previous hotel experience, sent a written offer to purchase the hotel to plaintiff, a majority stockholder in the Perry-Rigby Corporation which then owned the hotel. This offer was accepted on or about May 15, 1947, by the Perry-Rigby stockholders and on the same date the foregoing employment agreement between Nevin and plaintiff was executed.

On August 26, 1947, Nevin and his two sons incorporated the defendant, Nevin Hotel Company, and there-

after became and remained the only directors of the corporation until the death of Nevin on August 19, 1948. Throughout that period Nevin was president and treasurer of the corporation and owned 998 shares of its capital stock while his two sons owned one share each, fully accounting for the 1,000 shares issued and outstanding.

At the first meeting of the Board of Directors of the Nevin Hotel Company held August 27, 1947, Nevin, after reporting his above mentioned offer to purchase the Leland Hotel and the acceptance thereof, offered to assign the same to the corporation and the contract was thereupon so assigned, pursuant to unanimous approval of the Nevin Hotel Company's officers. In the early part of December, 1947, title to the hotel property was transferred to the Nevin Hotel Company.

The corporate minute book of the Nevin Hotel Company does not contain any formal resolution approving, or any reference to, the aforementioned employment contract. William C. Nevin, one of the directors of the Nevin Hotel Company, testified that he first saw a copy of the employment contract after the death of his father, John B. Nevin; that he was familiar with the books and records of the company; that the contract was never brought to the attention of the Board of Directors but that his father did tell him shortly after the Nevin Company took possession of the hotel that he was paying plaintiff $11,000 a year. He was not asked, and did not testify however, as did John D. Nevin, the remaining director of the corporation, that he had no knowledge of the content or terms of the employment agreement until after his father's death.

Plaintiff testified, over objection by defendant, that shortly after the Nevin Company took over he asked Nevin for ratification of the employment contract in accordance with its terms; that Nevin stated he did

not consider formal ratification necessary at that time; that other matters were more important and that he, Nevin, owned 99% of the stock and considered that the contract was made for the benefit of the Nevin Hotel Company. Plaintiff further testified that Nevin told him shortly before the Nevin Corporation took over the hotel, "Mr. Perry, you are hired as manager of the Leland Hotel and will assume that position for the Nevin Hotel Company as we take over on December 5, 1947." It appears that from and after December 7, 1947, plaintiff continued as manager of the hotel, occupying the manager's office and directing employment and supervision of personnel; that Nevin frequently visited the hotel; that plaintiff accepted his suggestions and received from him five letters dealing with hotel operation, all of which were signed "John B. Nevin, owner"; that until Nevin's death plaintiff conferred with him with respect to the hotel operation at least once a week on the average, and that he conferred with other hotel-management personnel very frequently and took an active interest in its management.

Commencing January 5, 1948, and continuing to September 5, 1948, plaintiff was paid by check of the Nevin Hotel Company at the rate specified in the contract in question.

The hotel auditor testified that moneys were issued to Nevin from the Nevin Hotel Company account for his personal use; that he would merely call and ask for a check for a certain sum and "whether the bank account could afford it or not," he would secure the money, the total of such withdrawals being somewhat in excess of $30,000.

On September 1, 1948, plaintiff received a letter from J. Dewan Nevin, as vice-president of the Nevin Hotel Company, notifying plaintiff that the Nevin Company

29

had disposed of the hotel property, effective as of that date, and on September 3, plaintiff sent a letter to the Nevin Hotel Company advising that he was holding himself in readiness to perform his contract.

Defendant urges error in the trial court's denial of its motions to dismiss the complaint; for directed verdict at the close of plaintiff's evidence and at the close of all evidence; for judgments notwithstanding the verdicts and for new trial; and further contends that the court erred in striking the affirmative defenses set out in its answer and amended answer, in giving certain instructions and refusing others, and finally that certain allegedly prejudicial arguments of plaintiff's counsel constitute reversible error.

In support of the contention that the trial court erred in denying its motions to dismiss, for directed verdicts, and for judgments notwithstanding the verdicts, defendant vigorously argues that plaintiff failed to prove or plead any facts showing a contractual relationship between plaintiff and this defendant. It is contended that plaintiff has shown only that he and Nevin, personally, entered into a written employment contract, that plaintiff's services were accepted by defendant and that he was paid by its corporate checks, but that however these facts might affect the liability of Nevin or his estate, they do not make the Nevin Hotel Company liable to perform the written agreement of Nevin. It is urged that neither the terms nor the existence of the contract were known to the corporate defendant and that it never did any act to make it a party to the contract, except that it received plaintiff's services and paid him a salary therefor. It is further urged that plaintiff, under the agreement, was content to accept Nevin as an employer and to rely upon his personal credit, irrespective of the manner in which Nevin controlled the hotel, and that if the provision in the

30

contract for ratification by any corporation formed by Nevin created a duty upon him, it clearly had no force "to create a duty in an unborn corporation that was not even within the present contemplation of the parties."

To support its argument that acceptance of services and payment therefor could not result in an adoption or assumption of the contract by defendant, reliance is placed upon decisions holding that where services are rendered pursuant to an express contract an implied contract cannot arise because when one party has promised to perform services and another to pay for them, the contract is complete and the services are no longer the employee's to command. Consequently, it is argued that there can be neither an express nor an implied contract with a third party because the employee has nothing left to offer; he has already bound himself under the first contract and the third party receives nothing from the employee to support a new contract between them. (*Northwestern M. & N. Academy v. Wadleigh,* 267 Ill. App. 1; *Walker v. Brown,* 28 Ill. 378.)

Defendant contends moreover that the contract in question cannot qualify as a "promoter's" contract entered into on behalf of a prospective corporation because the parties themselves, it is asserted, did not know whether a corporation would be formed but contemplated only the control of the hotel by Nevin. In support of this argument attention is directed to *Sands v. Potter,* 165 Ill. 397, *Mansfield v. Lang,* 293 Mass. 386, 200 N. E. 110, and particularly to *Little Rock & Fort Smith R. R. Co. v. Perry,* 37 Ark. 164, where the court remarked as follows:

"No authorities have gone to the length of holding that any contract made with individuals exclusively upon individual credit will become the contract of any

31

future corporation they may form for the more convenient management and use of the benefits of it.''

Plaintiff, in support of the action of the trial court, contends that by its acceptance of and payment for his services in the circumstances shown there, defendant adopted the agreement in question. He points out that in the foregoing cases relied on by defendant there is no indication that a corporation was contemplated, while in this case numerous paragraphs of the agreement indicate that purchase and operation of the hotel through a corporation was contemplated by Nevin and that the corporation was actually organized and controlled by Nevin and therefore necessarily had knowledge of the existence of the contract when it accepted and paid for plaintiff's services. Accordingly plaintiff urges that the agreement was properly viewed by the trial court as having been made for the benefit of the defendant corporation as in *White v. Stevens,* 326 Ill. 528; *Morgan v. Bon Bon Co., Inc.,* 222 N. Y. 22, 118 N. E. 205.

In *White v. Stevens* the promoter of a hotel corporation contracted to pay to Stevens & Co. a commission for services rendered in furnishing a hotel, and the hotel company, after incorporation, with the promoter as its president, accepted and used the furniture and equipment. The hotel company thereafter attempted to deny liability for payment of the commissions on the ground that it never adopted, ratified or accepted the contract. In holding that the corporation must be regarded as having ratified the contract to pay the commission, the court remarked as follows:

''The contract with Stevens & Co. to furnish the hotel was made before the hotel company was incorporated, but it was made for the hotel company's benefit. The furniture was placed in the hotel and used by the hotel company, and it received the benefit of it and became

32

obligated for it. . . . It was not essential that the hotel corporation should formally approve the contract after its organization. The officers of the hotel corporation, and at least some of the stockholders, knew of the performance of the contract by Stevens & Co., accepted and used the furniture and by their conduct ratified performance of the contract.''

In the *Bon Bon* case the court remarked in part as follows:

''We think that the evidence thus admitted did permit the jury to find that the respondent had adopted the contract made by its organizers with the appellant and had become bounden by the terms thereof. These organizers became the corporation, the contract was made in view of the organization of the respondent and for its benefit, with the knowledge and approval of the men who organized the corporation and became its stockholders and officers, the appellant was permitted to perform the services which had been contracted for, and the corporation chargeable through its officers with full knowledge of the contract under which these services were rendered, received the benefit thereof. It is well established that a corporation which, under such circumstances, takes the benefits of a contract may be held to have adopted and assumed also its obligations.''

In rebuttal, defendant seeks to distinguish these cases on the ground that they deal with ''pure promoters' contracts'' made for the sole benefit of inchoate corporations and that such contracts in their very nature are anomalous, for, although the promoter is a party to the contract, performance is not expected of him nor is he acting for any existing principal, citing Ehrick and Bunzl, Promoter's Contracts, 38 Yale L. J. 1011.

The gist of defendant's argument appears to be that a corporation is liable on such a ''promoter's'' contract only when it is shown: (1) that the contract is *solely*

for the benefit of a corporation to be formed rather than for the benefit of such a corporation *or* an individual, and (2) that the parties to the contract did not intend that the promoter, as an individual, be bound to perform.

That this is not an accurate statement of the law seems apparent from the decision of the Supreme Court in *White v. Stevens* discussed above. There the contract in question was apparently in the form of a letter from the "promoter" to Stevens and Co. requesting that corporation to take "professional supervision of the entire furnishing and equipping of the new hotel now being built for me at Warren, Ohio."

██ So far as appears from this language the services requested were to be solely for the benefit of the individual who wrote the letter and the obligation to pay a commission for the services requested was to be his personal obligation. While extrinsic evidence indicated that incorporation of the hotel was intended or contemplated, it seems unlikely that in the face of this letter the writer of it could have escaped liability to pay or that Stevens and Co. after acceptance could have avoided liability to perform, if the hotel corporation had not been formed. Attention has not been directed to any authority stating, as defendant seems to suggest, that defendant could not be bound by the contract in question unless at the time it was made, there existed what amounted to positive assurance that a corporation would at all events be formed *and* that by undisclosed understanding the "promoter" was not to be held liable personally. It may be assumed but not decided that defendant is not liable unless it is shown that at the time the contract in question was made, incorporation of defendant was "contemplated" by the parties and that plaintiff was to work for such corporation. No authority has been cited, however, which attempts to correlate the required "contemplation" of

incorporation with any definite degree of *certainty* that a corporation will be formed. It is manifest from the language of the agreement in question that Nevin and plaintiff "contemplated" the formation of a corporation to operate the hotel in the sense that they recognized the possibility thereof and made definite detailed provision for that eventuality. In so doing they sufficiently "contemplated" incorporation of the defendant.

This court believes that the facts proved in this case bring it clearly within the Supreme Court's decision in *White v. Stevens* and that decisions relied upon by defendant to the contrary may each be sufficiently distinguished for the reason that in the contracts there involved no mention whatever is made of a corporation to be organized to receive any benefit under the agreement.

Defendant vigorously urges that regardless of its other contentions on this appeal, the contract in question was within the statute of frauds because not to be performed within one year, and that the trial court therefore erred in striking those parts of its answer and amended answer raising the defense of the statute which, it is asserted, is decisive of all issues upon this appeal.

The statute of frauds and its exceptions has long been a subject of learned and oftentimes ingenious exposition and it is at least a fair question whether the rules of law concerning its interpretation and application have been developed with the purposes sought to be achieved by the statute clearly in view. Within this framework it has earnestly been debated by counsel on this appeal whether the contract in question is or is not one to be performed within one year, within the meaning of the statute, or whether it was completely executed by Perry, making the defense of the statute unavailable to defendant, or whether it was fully

35

performed upon termination by defendant, or whether it contains two separate alternative promises, one of which is and the other of which is not within the statute, and finally, whether or not the defense of the statute, if allowed, would perpetrate the very fraud the statute is designed to prevent.

It seems clear, however, that all of these questions become immaterial once it is determined that the defendant corporation, by its acts and conduct, ratified in its entirety, the written agreement originally existing between plaintiff and Nevin. The terms of the contract in question are in writing and there is no serious question raised as to the interpretation of them. Consequently, the only question upon which the statute of frauds is relevant is the question whether defendant ratified the contract which already existed in writing between plaintiff and Nevin. Express formal ratification of the contract by defendant could have been accomplished practically instantaneously immediately after its incorporation. This, the record shows, was contemplated but was not done. In the alternative, it is clear that implied ratification may be found from the defendant's course of conduct.

While the facts may be distinguished, the language of the court in *Interstate Folding Box Co. v. LaMode Garment Mfg. Co.*, 301 Ill. App. 283, is highly pertinent here. In that case, plaintiff relied upon certain representations made by one Gershenow on behalf of the defendant corporation which at the time had not been formed, concerning which the court observed in part as follows:

"Gershenow, of course, did not have authority to act for an entity not yet in existence. . . . Granting that Gershenow did not have authority at the time his offer was made, the new corporation as soon as it came into

existence could accept the offer and by so doing ratify and adopt the action of the unauthorized agent. . . . The defendant could not be immediately bound by a promise of 'Gershenow made in its behalf when it was not in fact in existence; but when, as the complaint alleges, defendant with full knowledge took possession of all the assets of the garment company, thus depriving plaintiff of the means by which the garment company's obligation to plaintiff could be enforced, and when, as under circumstances alleged in the complaint, it ratified Gershenow's agreement made in its behalf by ordering under the contracts and paying the prices named in the contracts it would seem, irrespective of whether there was a technical novation at the time of the Gershenow promise, that defendant is now estopped to deny the novation.''

██ ██ Whether it be said that defendant is in the circumstances shown in this case estopped to rely upon the statute or that the ratification takes the case out of the statute is immaterial. By analogy we find applicable here the rule that ''ratification by the principal of a memorandum of a contract signed by his agent is sufficient compliance with the statute of frauds, although the agent was not properly authorized to enter into the contract.'' (See 37 C. J. S. 711.) Thus, the statute of frauds does not, in our opinion, bar proof of an implied ratification of the contract in question even if it be assumed that the contract itself is within the statute. This analysis appears to us consonant with the apparent purpose of that section of the statute here in question.

None of the foregoing, in our opinion, is at variance with any of the authorities cited by defendant in support of its contention that the statute of frauds bars plaintiff's action. The decision of this court in *Washburn v. Hoxide Institute*, 249 Ill. App. 194, and primarily relied upon by defendant may be readily distin-

guished in a number of significant respects. In that case plaintiff entered into a written contract with three individuals styled as trustees whom the court found to be partners, plaintiff agreeing to serve as superintendent of a hospital owned by them for a period of ten years at a stated annual compensation to be increased periodically in accordance with a formula set out in the contract. In addition plaintiff was to receive upon execution of the agreement beneficial interests in a certain clinic which interests were to be returned in the event he resigned within six months. After plaintiff had performed his duties under the contract for a period slightly in excess of four months, the partners formed a corporation. The only evidence tending to show the relationship which thereafter existed between plaintiff and the corporation was plaintiff's testimony that approximately ten days thereafter he went to the corporation's president "and asked him if it would be necessary to have a new agreement for my services with the corporation and he said no, to continue on the agreement that I had with the trustees; he said it would not be necessary that they change it." Thereafter plaintiff continued to render service to the corporation for a period slightly in excess of one year whereupon he apparently resigned.

Plaintiff's claim appears to have been based upon the theory that his written agreement with the individual partners or trustees, taken together with the above conversation, constituted a valid contract between him and the corporation. It was held that the contract so relied upon, being partly written and partly in parol, must be treated as a parol contract and that proof of it was therefore barred by the statute of frauds. It was further held that even if it be conceded, the corporate president had implied power to make an employment contract, he exceeded the power in attempting to bind the corporation to a ten-year employment contract.

In this case there is no hint whatever from any phase of the evidence that the original employment contract was made for the benefit of or in view of a corporation to be formed at a later date so that upon the authority of defendant's own cases cited and discussed above, it appears that it would have been impossible for the Hoxide corporation to have become liable under the contract there in question. Moreover it is to be noted that the court, in its decision in the *Hoxide* case, specifically finds that "there is no evidence in this case that such contract was ever ratified by the corporation. . . ."

In these circumstances it is clear that the court, in the *Hoxide* case, did not consider and in fact had no occasion to consider the question whether the statute of frauds would bar proof of ratification of a contract in the circumstances existing in the instant case.

██ Relying on the rule that performance of contract may be excused upon the death of one of the parties thereto, when the performance of it depends upon his continued existence, defendant contends that the court erred in striking those paragraphs of its answer and amended answer alleging facts which it is contended show that upon the death of Nevin, the performance contemplated by the original parties to the contract was impossible. Having held that the contract in question was ratified by the defendant corporation and that Nevin acted in the capacity of an officer thereof, we believe it clear that the decision in *Levy v. Wilmes*, 239 Ill. App. 229, relied upon by defendant, and holding that in the circumstances there shown the death of a hotel proprietor terminated his contract with his hotel manager, is not controlling here. An analysis of this case suggests that it was based on the primary reason that the personal cooperation and supervision of the proprietor with the manager was needed for the proper fulfilment of the contract. In

39

the instant case the contrary is true, as Clause 8 provided that the "Manager * * * shall be subject in all things to the supervision of owner, *or to any corporation organized and controlled by him.*"

■ Defendant contends that the court erred in giving to the jury plaintiff's instructions Number 3, Number 4 and Number 5. By Number 3, which is peremptory in form, the jury was instructed to find the issues for the plaintiff if it found that defendant took possession and control of the hotel and accepted the services of plaintiff with knowledge of the existence of the agreement in question, that plaintiff performed all of the terms and conditions thereof and that defendant breached the agreement in the manner complained of. The contention that this instruction is contrary to law has been adequately disposed of heretofore. In addition it is urged, however, that there is not a scintilla of evidence in the record to show that defendant had knowledge of the agreement and that the undisputed evidence is that it in fact did not.

■■ It should be unnecessary to point out that a corporation can have knowledge of facts only through its officers and if defendant means to suggest that Nevin, one of its officers, did not have knowledge of the existence of the agreement, it is obviously unnecessary to comment on that contention in view of what has been said above. Evidence from which the jury might properly have found that other officers of the corporation also had knowledge of the existence of the agreement may be briefly summarized as follows. Both of Nevin's sons, the other officers and directors of the corporation, knew that plaintiff was carried on defendant's books as its employee under the title."manager." Both sons also knew that plaintiff had agreed in the contract for purchase of the hotel property not to work in the hotel business in Springfield without the consent

40

of Nevin or the Nevin Hotel Company and both knew that no consent had been given by their father or the Hotel Company for plaintiff to engage in the employment of manager of any other hotel. Immediately after defendant took over the hotel properties one of Nevin's sons executed a proxy designating as his attorney and proxy a member of the law firm whose name appeared on the contract in question and also the contract for the purchase of the hotel property, and he thereafter performed no official act during his father's lifetime. It had already been noted in the introductory statement of facts that although Nevin's other son testified that he first saw a copy of the employment contract after his father's death, and that the contract was never brought to the attention of the Board of Directors, he was not asked and did not testify, as did his brother, that he had no knowledge of the content or terms of the employment agreement until after his father's death.

By plaintiff's given instruction No. 4 the jury was directed to find the issues for plaintiff if it found from the evidence and the instructions of the court that defendant became the owner of the hotel and ratified and adopted the contract sued upon, that plaintiff became manager of the hotel and performed all terms and conditions of the contract, and that thereafter defendant disposed of the hotel other than to a corporation organized and controlled by Nevin, and thereupon terminated the agreement without paying plaintiff a year's compensation. It is objected that this instruction authorized the jury to determine the legal conclusion that the contract was ratified and adopted without giving any definition of those terms which are complicated and technical and have been the subject of learned legal treatises.

It is sufficient to point out that defendant offered no instruction defining the terms complained of but on the

41

contrary had given on its behalf an instruction in identical language advising the jury that plaintiff, before he could recover, must prove by a preponderance of the evidence that defendant ratified and adopted the agreement in question. Moreover the same given instruction of defendant appears to have indirectly supplied the definition by instructing the jury that before plaintiff could recover he had to prove by a preponderance of the evidence that not less than two of the Board of Directors had knowledge of the existence of the contract and the terms and conditions thereof while the services were being performed by plaintiff and that, with such knowledge, they accepted plaintiff's services and paid him the compensation provided for in the contract. For reasons sufficiently discussed above, we are of the opinion that as plaintiff contends, this instruction limited the jury in its consideration of the question of ratification more narrowly than the law required.

Plaintiff's given instruction No. 5 advised the jury that the president of a corporation is presumed to have authority to execute such contracts as are required in the everyday normal course of business and that if the jury found from a preponderance of the evidence that the contract sued upon was of such character that Nevin, under the circumstances shown, would be expected to make in the regular and general course of business of the hotel company, and that plaintiff fully performed and defendant accepted the benefit thereof, the issues should be found in plaintiff's favor. It is objected that it is a question of law not of fact whether the contract was in the normal course of business and that, as a matter of law, it was clearly beyond the authority of a corporate officer. (*Bloom v. Nathan Vehon Co.*, 341 Ill. 200; *Washburn v. Hoxide Institute, supra; Sacks v. Helene Curtis Industries, Inc.*, 340 Ill. App. 76.) While it is true that in these cases it was

42

held in accordance with the usual rule that the implied powers of a corporate officer to bind the corporation to a contract of employment extend only to reasonable terms of employment, the evidence failed to show in any of these cases the extreme and exclusive degree of control over corporate affairs which this record shows was exercised by Nevin. The cases cited by plaintiff, although from foreign jurisdictions, are, in our opinion, sufficient authority to make it a question for the jury whether in the unusual circumstances shown here, the contract sued upon was of such character as Nevin would be expected to make in the regular course of business of the hotel. (See *Edwards v. Plains Light & Water Co.*, 49 Mont. 535, 143 Pac. 962 and *State National Bank v. Encinal Mercantile Co.* (Tex. Civ. App.), 277 S. W. 398.)

▮ This instruction standing alone is, in our opinion, subject to the criticism that it omits as an element the question whether such a contract was actually made. This deficiency, however, in our opinion, was adequately covered in other given instructions and in particular in defendant's given instruction No. 5, the substance of which is set out above.

▮ From the foregoing it is clear that defendant's refused instructions Numbers 1, 2 and 3 were properly refused and that refused instruction No. 4 which defendant represents states the elementary law of ratification of contracts was fully embodied in defendant's given instruction No. 5.

▮▮ Finally, it is contended that certain portions of the argument of plaintiff's counsel were prejudicial and constituted reversible error. It appears that upon objection, that part of counsel's argument which might have been taken as an expression of his personal feeling was stricken, thereby sufficiently eliminating any likelihood of prejudice. It does not appear that there was anything improper in counsel's arguments

43

suggesting that payment of plaintiff by the corporate check of defendant is indicative of ratification of the contract in question.

The judgments of the trial court will be affirmed.

*Affirmed.*