Central Standard Life Insurance Company, etc., Plaintiff-Appellant, v. Ray P. Gardner, et al., Defendants-Appellees.

**Gen. No. 48,438.**

First District, First Division.

July 9, 1962.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (Thomas M. Thomas and J. J. Edman, of counsel), for appellant.

Brundage & Short, of Chicago (Charles F. Short, Jr., of counsel), for appellee; Winston, Strawn, Smith & Patterson, of Chicago, and Robert J. Clendenin, of Monmouth, for defendants.

MR. JUSTICE ENGLISH delivered the opinion of the court.

Plaintiff, as successor trustee of a trust created through a reinsurance contract, sought court approval of the administration of the trust by itself and its predecessor trustee. At the conclusion of the litigation, fees were awarded to attorneys who performed services for two different classes of policyholder defendants. Plaintiff has appealed from those orders.

In 1929 a reinsurance agreement was entered into between Illinois Bankers Life Assurance Company (a

legal reserve stock company) and Illinois Bankers Life Assurance Association (a mutual assessment association) pursuant to which the assets of the Association were turned over to the Company in trust for the policy-holding members of the Association. Plaintiff became successor trustee by assumption of assets and liabilities of the Company under a second reinsurance agreement in 1951.

In 1953 complaint was filed by the successor trustee for approval of the trust account covering the entire period of its administration, and for authorization to make certain increases in assessment rates. For reasons not now important, the policyholder beneficiaries of the trust were divided into two classes and designated in the complaint as Class I and Class II defendants.

An order was entered in 1954 appointing Attorney Edward L. S. Arkema to represent Class I defendants. Arkema's services involved his spending 2,667½ hours in the various phases of this litigation: before the master, the chancellor, the Appellate Court and the Supreme Court. There were hearings which resulted in five master's reports, six decrees, two appeals to the Appellate Court and one to the Supreme Court. He was allowed $30,000 on account, and later, by one of the orders appealed from, he was awarded an additional fee of $25,000.

The record discloses that plaintiff made no substantial objection to Arkema's fees in the trial court, and its brief concedes that he made a particularly valuable contribution to the fund through his services relating to the sale of certain mineral interests belonging to the trust. Objection is now made to the award of the final $25,000 on the ground that it is excessive, since Arkema did not carry the primary responsibility in the appeal above referred to, and since the Class I defendants profited only slightly by reason of this litigation.

295

██ ██ It is basic that a point not made in the trial court cannot be urged on appeal. (Dirksmeyer v. Barnes, 2 Ill App2d 496, 509, 119 NE2d 813.) On the merits of the question, however, we believe that the fee was fully justified and see no basis for finding it excessive. The order allowing the Arkema fee is, therefore, affirmed.

The complaint named Robert J. Clendenin (among others) as a defendant to represent the Class II defendants, and he filed his appearance as such. Early in the litigation, the master reported that Clendenin sufficiently represented the Class II defendants and, on motion of plaintiff, the court, in a decree entered in 1954, found that "the second class is properly and adequately represented by Robert J. Clendenin." Thereafter, the other defendants named as representatives of the class did not participate actively in the litigation. In 1955, when it became apparent that the volume of work would be too heavy for a single lawyer, the court granted leave to Winston, Strawn, Black and Towner (now Winston, Strawn, Smith and Patterson) to file their appearance as additional counsel for the Class II defendants theretofore represented by Clendenin. Throughout the rest of the litigation, Clendenin and the Winston, Strawn firm performed legal services jointly on behalf of the Class II defendants, and plaintiff raised no question as to the authority for their so acting.

██ Plaintiff has made the preliminary point in this court, however, that these attorneys gratuitously undertook to represent Class II defendants without any court appointment or authority sufficient to support the allowance of fees from the trust fund. We believe that the facts above recited indicate that they did have such authority and that they exercised it with the full

296

knowledge and consent of both plaintiff and the court. A formal order of appointment was unnecessary under the circumstances.

█ Another point raised by plaintiff at the threshold of this controversy is that the hearing on fees to be allowed the attorneys for Class II defendants was held without proper notice. The statement is made in plaintiff's brief that notice and a copy of the petition for fees were not served on its attorney until late in the afternoon of May 23, 1960 for a hearing to be held on May 24. This seems to have stemmed from the confusion which arose when the notice of the motion for fees was not filed in court with the petition. It appears incontrovertible now, however, that notice and a copy of the petition were served on counsel for plaintiff on May 19, 1960. Furthermore, at the hearing plaintiff's attorney made no point of improper notice.

Arkema was in Europe on May 24, but another attorney was present on his behalf and made no objection to the conduct of the hearing. When Arkema returned a few weeks later, he stated to the court his objection to the allowance of any fees to the attorneys for Class II defendants, and the chancellor permitted his statement to stand as an offer of proof.

We find that the fee hearings were held on due notice.

In 1941 Clendenin was appointed to the office of General Counsel of Illinois Bankers Life Assurance Company (the original trustee of the trust in question) and served in that capacity for about ten years at a salary of $6,000 per year. Previously he had also performed legal services for the Company from time to time. As General Counsel he regularly attended meetings of the board of directors.

Because of this prior relationship with the Company, trustee, plaintiff contends that Clendenin's representa-

tion of the policyholder beneficiaries was improper and that he is, therefore, prohibited by law and the canons of ethics from receiving any fee whatsoever.

■ The canon on conflicting interests is Canon 6 of the American Bar Association, and the part relied on by plaintiff provides:

> "The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed."

The cases relied on stand for the proposition set forth in the canon. (People v. Gerold, 265 Ill 448, 477, 107 NE 165; People ex rel. Livers v. Hanson, 290 Ill 370, 126 NE 268; Consolidated Theatres v. Warner Bros. Cir. Man. Corp., 216 F2d 920.)

It is not argued that Clendenin, while counsel for the Company, actually came into possession of secret or confidential information concerning management of the trust, but only that he was in a position to do so. The record on this point discloses that, while so employed, Clendenin handled only such legal matters as were referred to him, and that these did not involve the reposing in him of any confidences in regard to administration of the trust. We recognize the importance to the profession of the principles embodied in Canon 6, but the canon does not appear to us to be applicable on the facts to the case at bar.

■ ■ Consideration of the remaining portions of Canon 6 leads to the same conclusion for an additional reason. The full canon clearly excepts from its proscription against a lawyer's representing conflicting interests, those services which are undertaken "by express consent of all concerned given after a full dis-

298

closure of the facts." (Reports, ABA, Vol 62, p 1107.) In this case Clendenin was selected as a defendant to represent Class II by plaintiff itself, acting through its able and experienced attorney in this litigation, and through its top officers, who happened to be lawyers, and who were fully aware of Clendenin's previous relationship with the Company. Included among plaintiff's officers who participated in the selection of Clendenin as such a representative was its Vice President Loren Murphy, a former Justice of the Illinois Supreme Court, who had succeeded Clendenin as General Counsel of the Company. At every turn in the litigation, some instances of which have been pointed out in this opinion, plaintiff evidenced its knowledgeable consent to the representation of the trust beneficiaries by Clendenin—until the issue was raised in this court. We consider the point to be without merit.

The fee petition of the attorneys for Class II defendants set forth the time spent on the litigation in great detail and specified the hourly fee rate sought. This part of the petition may be recapitulated as follows:

| Clendenin | 3,261 hours at $50 | $163,050 |
|---|---|---|
| Christensen (Winston, Strawn) | 865 hours at $50 | 43,250 |
| Partners of Christensen and Clendenin | 452½ hours at $40 | 18,100 |
| Associates of Christensen | 144 hours at $20 | 2,880 |
| | 4,722½ hours | $227,280 |

An additional fee of 25% ($56,820) was sought because of the contingencies which existed in the case

and on the basis of benefits or recoveries achieved for the Class II defendants. Thus, the total fee requested was $284,100.

As an alternative, the petition declared that a fee determined entirely on a contingent fee basis of 25% would be proper, and would amount to $356,500 on a total recovery of $1,426,000.

The petitioners alleged that their achievements on behalf of the Class II beneficiaries included the following:

(1) The trustee was ordered to restore certain oil royalties approximating (with interest) $475,000.

(2) The trustee was required to hold the trust harmless against loss from retention in the trust of the home office building, resulting in recovery of $40,000.

(3) The trustee was directed to treat the trust for the two classes of beneficiaries as one trust, thus benefiting Class II by $436,000 in excess of reserves necessary for Class I.

(4) A higher price was forced on the sale of mineral rights to the benefit of Class II in the approximate amount of $100,000 to $150,000.

(5) Negotiations with the trustee resulted in its bearing at least $100,000 of its own legal expenses.

(6) Negotiations with the trustee resulted in an agreement that its future fee would continue to be based on the original, rather than the increased, rates, at an estimated saving to Class II of $250,000.

In addition to the matters which were heard in the trial court by the master and the chancellor, the attorneys for Class II prosecuted an appeal to this court, and, on losing here, carried the appeal to the Supreme

Court where they finally achieved a notable victory. (Central Standard Life Ins. Co. v. Gardner, 19 Ill App 2d 431, 154 NE2d 316; 17 Ill2d 220, 161 NE2d 278.)

At the hearing, Clendenin and Christensen testified in support of their petition and they also presented the testimony of Edward R. Johnston, a Chicago lawyer of more than fifty years' experience in litigated matters in all types of courts. He stated that in his opinion the services in question should not properly be appraised merely on a time basis because of the substantial results accomplished for the Class II beneficiaries and because the case was essentially contingent; that in his opinion $275,000 was a fair and reasonable fee under all the circumstances.

Plaintiff did not cross-examine any of the witnesses on the question of fees, nor did it introduce any contrary evidence. After the hearing in May, witnesses were heard on the Arkema fee petition in June, and then on July 18 the matter came up for decision. At that time the following colloquy took place between the attorney for plaintiff, Vernon Loucks, and the chancellor:

> "Mr. Loucks: I want the record to show in behalf of the plaintiff, that we do not object to fees being allowed to them, but we object to fees allowed in the amount asked and we feel that is a high figure, and if the Court cares to decide it himself, I don't want to take time. We object to fees being allowed in the amount asked.
>
> The Court: What amount do you feel should be allowed?
>
> Mr. Loucks: They have asked for the item of time and also on the item of contingency added to it. We feel this is entirely out of place in this kind of case.
>
> The Court: It should be limited to the question of actual time?

Mr. Loucks: It should be limited to the question of actual time."

Plaintiff's attorney then made further argument directed solely against the adding of any fee or commission on top of hourly compensation because of any contingency feature.

█ While it is true that Arkema made other objections, and later, for many stated reasons, moved to vacate the order allowing fees, his objections do not inure to the benefit of plaintiff. (Allegretti v. Murphy-Miles Oil Co., 280 Ill App 378, 391.)

The record is clear that the chancellor agreed with plaintiff on its contingency fee objection, for, in announcing his ruling, Judge Niemeyer said, "I base it solely upon an hourly basis, and not with the allowance of the additional amount which Mr. Johnston testified to, about $56,000, I think 25% of the amount, because of the contingency nature of the proceedings." He then allowed a fee of $222,280, being the amount requested on a time basis, less $5,000 previously paid on account.

In arguing further that the award was excessive, plaintiff concedes that it was proper for the court to consider the results accomplished. It disputes, however, that the attorneys for Class II defendants were responsible for all of the savings which accrued to the trust fund in the course of the litigation, as set forth in the petition for fees. It is argued that plaintiff, of its own volition, was willing to agree to some of the more substantial restoration items, and that other persons were entitled to partial, or even primary, credit in other instances. It is pointed out further that these attorneys also spent much time on points and theories which were never successful.

When he ruled on the fee question the chancellor stated, in that regard:

"The Court: The thing that strikes me on the question of allowance of fees for the attorneys on these Class II policy holders—they started out, figuratively speaking, with the world against them, the Master, the trial Judge, the Appellate Court, and some of their co-laborers, when they got into the Appellate Court, and it was by their persistence, and their persistence alone, that this matter was ultimately carried to the Supreme Court and a fund of around one-half million dollars realized for the benefit of these policy holders.

Mr. Loucks: Unfortunately for us, but to their credit."

In the draft order entered at that time the trial court made these findings (among others):

"The Court finds that said attorneys performed the services and reasonably devoted the hours of work therein (in the petition) alleged for the protection and advancement of the interests of Class II defendants herein, and as a result of their efforts procured for the fund involved cash returns or savings substantially in excess of $1,400,000."

■ We are not persuaded by the arguments of plaintiff, nor by the complicated facts disclosed by the voluminous record, that the chancellor was wrong in his conclusion as to how much money was saved to the Class II defendants through the efforts of their counsel. But even if he were wrong as to part of the recovery or savings, we do not consider that the order would have to be modified or reversed on that account.

The services of attorneys for defendants were essential to the accomplishment of the purpose for which this complaint was filed. The nature of the litigation

and the extent of the accounting by plaintiff and its predecessor over so many years, required that defendants' counsel be possessed of a high degree of learning, skill and experience in matters of this kind. Even if plaintiff's accounting had been found in perfect order, and there had been no recovery or saving accomplished by counsel for defendants, they would still have been entitled to a very large fee under the circumstances.

▮▮▮▮▮ That the awarding of fees is a matter within the discretion of the court is too well settled to justify citation of authorities. Nor is that principle disputed here. The guideposts to be noticed in determining the amount of an attorney's fee are set forth in Canon 12 of the Illinois State and Chicago Bar Associations and are consistent with case law. It does not appear to us that the chancellor's fixing of the fees in this case abused his discretion or departed materially from the principles of the canon.

The orders appealed from are affirmed.

Affirmed.

BURMAN, P. J. and MURPHY, J., concur.