FLOYD BUNCH, Plaintiff-Appellee, *v.* LOWELL THOMAS ROSE *et al.*, Defendants-Appellants.

(No. 11795;

Fourth District—February 14, 1973.

Earl R. Anderson, of Massey, Anderson & Gibson, of Paris, and Roberts & Kepner, of Springfield, (Maurice Kepner, of counsel,) both for appellants.

Ryan and Heller, Ltd., of Mattoon, (Harlan Heller and Richard Kruger, of counsel,) for appellee.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

This case arose from a collision which occurred at an open country intersection. The Plaintiff-Appellee, Floyd Bunch, was a guest passenger riding in a pick-up truck being driven by the Defendant-Appellant, Lowell Thomas Rose. The truck collided with an automobile owned and operated by Defendant-Appellant, George W. Bender. In his complaint, plaintiff charged Rose with wilful and wanton conduct and Bender with negligence. The case was tried before a jury which found against both defendants and assessed damages in the sum of $75,000. The trial judge entered judgment on the verdict but later reduced the judgment to $74,000 by allowing credit for a $1,000 payment made under an insurance policy of defendant Rose.

The incident occurred on August 15, 1969, at approximately 7:00 P.M. It was still daylight, the road surface was dry, the weather clear. The plaintiff was riding with Rose in the cab of the truck, seated on the right with his 10 year old daughter, Jana Bunch between him and the driver, defendant Rose. The truck was headed east. Defendant Bender, with his wife as a passenger, was headed north. The field at the southwest corner of the intersection was planted in corn, the corn was tall. It had been cut back from the intersection some 15 feet, but blocked Rose's view to the south and Bender's view to the west. The field on Bender's right (to the east) was planted in soybeans which were not high enough to obscure his view in that direction. The field on Rose's left was also planted in corn. Thus Rose's vision was obscured both to his left and right while that of Bender was obscured to the left, from which direction Rose was proceeding, but not to his right. The roadways were level, the intersection was not controlled by any yield, stop or other traffic sign. Illinois State

Trooper Osborne testified that the point of impact was two to three feet south of the center of the intersection. Bender's testimony, with which Mrs. Bender's testimony was in substantial agreement, was that he was going north in the middle of the road, speed 40 to 50 miles per hour. About 200 feet from the intersection he sounded his horn, heard no response. He could not see anything on the road to his left until he was 40 to 50 feet south of the intersection when he observed Rose's truck which was then about 120 feet from the intersection and going at a rate of 55 to 60 miles per hour. Bender applied his brakes but the truck maintained its speed or perhaps accelerated to about 65 miles per hour. Bender had slowed to 10 to 15 miles per hour when he entered the intersection but struck the right rear of the truck. Bender testified that immediately after the collision Rose told him that "I heard your honking but I thought I could speed up and get across before you got there." Mrs. Bender's testimony varied with that of her husband in rather minor detail as to estimates of speed and distance. She testified, on cross-examination, that at the time of giving her deposition she thought that her husband could have avoided the accident "* * * if he had thought fast enough by turning to the left." This opinion was admitted without objection. Bender's speed estimates given during his deposition varied from those given at trial.

Defendant Rose testified that he was travelling 30 to 40 miles per hour as he approached the intersection and he reduced that speed after entering the intersection. He did not see Bender's car in time to form an opinion as to its speed, seeing only an instant before the collision happened. He heard no horn and said there was no conversation about his hearing one or increasing his speed.

The plaintiff Bunch had no recollection as to how the accident occurred, his daughter Jana was unable to provide any details. Plaintiff sustained a back injury, was hospitalized for two months and placed in traction. Surgery was performed to fuse the bony union between the tenth and twelfth thoracic vertabrae. After discharge from the hospital he remained at home for two months and returned to his job as a side laster at a shoe factory on December 22, 1969. His medical advice was to refrain from heavy work, and he wore a back brace until March, 1970. Doctor Peterson testified that he had last seen plaintiff on September 3, 1970, at which time he still complained of low back pain, that this was caused by the fusing of the vertabrae during the healing process, that the pain was probably permanent but not likely to interfere with a normal worklife.

Plaintiff testified that he had difficulty in performing his work, and was exhausted at day's end. Both plaintiff and his wife testified to his

inability to engage in former activities such as hunting, fishing, playing with his daughter, maintenance work around the home and on the family car. Plaintiff's medical expenses amounted to $4073 and he lost $2489 in wages.

To establish future loss of wages defendant, on the second day of trial, called two witnesses neither of whom had been listed in the plaintiff's answer to interrogatories on June 25, 1970, nor in plaintiff's answer to the court's pretrial order entered December 9, 1970, to the effect, "that each party shall furnish to adverse parties names of persons having knowledge of relevant facts and their addresses on or before 1/1/71. Names and addresses of persons later discovered to be furnished within 24 hours of discovery." The witnesses in question were Richard Helton, manager of the Brown Shoe Company where plaintiff was employed and Robert Meier, an economics statistician at Eastern Illinois University.

Before the first witness was called on the second day of trial and outside the presence of the jury, plaintiff's counsel informed the Court and defendant's counsel that he had, the night before, and for the first time talked to Meier and intended to call him as a witness on the issue of damages. That he had never used the witness before, that he had never before used a "statistician on economics in my life." No objection was stated to the use of the witness Helton, nor is any error urged as to plaintiff's failure to list him as a witness. As to Meier, Bender's counsel stated the following objections, "I object to the witness. The purpose of listing the witness is to give the other side a chance to examine the witnesses themselves. This is a type of witness we will have to speculate as to what he is going to say and what he is going to be. I just want to make that general objection. I will agree that he was probably not talked to until last night. On the other hand, there was no warning to us. I think he could have been talked to two or three nights ahead of time, to give the defendants a chance to check what he is going to say and have a chance to answer." Plaintiff's counsel responded, "I think the cases hold, when you have newly discovered evidence, it is permissible to offer it. It is not any violation of the object of the statute", to which Bender's counsel replied, "I will agree with that. It is [not] newly discovered evidence. This is a part of the case we normally expect." The court overruled the objection. We note that this was the extent of the objection made to Meier's testimony. There was no request for continuance on the part of defense counsel, nor was there any request that the witness be made available for interview prior to his testifying.

Helton then testified that there were two production lines on which side lasters worked. Line 1, the faster, consisted of 3 men, and line 2, the slower, was manned by 4 men. He further testified that side lasters

were paid on a piece-work basis and prior to plaintiff's injury the rate of pay was $5.02 per 100 pairs of shoes and after the injuries the rate at the factory was increased to $5.40. The plaintiff testified that he was unable to produce as much work following his accident as he had been prior thereto. He had been on the faster line prior to the accident and was assigned to the slower line after the accident. Helton testified that there was an 11% decrease in plaintiff's production after he returned to work and explained this by saying that prior to the accident plaintiff had produced 36% of the faster line but thereafter produced only 25% of the slower line. Helton also testified as to the number of shoes which defendant had been able to produce in one full week, beginning January 10, 1970, and testified as to the pay which he had received for each of seven weeks prior to the accident. The record discloses that no objection was made at the time Helton was presented as a witness and not a single objection was made by defense counsel to any question put to, or answer elicited from, him during the entire course of his testimony including, of course, his testimony relating to the 11% loss of production. Helton also testified that he could translate the 11% loss of production into dollars of loss to plaintiff from the time that he went to work on line 2 to the present and that that loss amounted to $3006.00 "This would be the amount that he lost, would be the 11% that he lost actually from the time that he went on line 2 until the present date." Defense counsel asked only two questions on cross-examination which resulted in amplification, by Helton, as to how he arrived at the $3006.00 loss figure. There was no motion to strike any of Helton's testimony.

Meier was then called as a witness and testified as follows: Plaintiff's life expectancy was 29.9 years, his work expectancy 22.3 years. He testified as to statistics kept by the Bureau of Labor and particularly to the earnings of laborers in the leather goods and footwear industry from 1947 to 1969, both nationally and in the State of Illinois. The average increase in earnings during the period was 4½% per year, and for the last 5 years was 5.1%. He testified that from these figures he was able to project with reasonable certainty the future wages to be paid to shoe workers in Coles County and submitted a chart of the future salaries. Then, using the 11% decrease in plaintiff's productivity, as testified to by Helton, Meier concluded that plaintiff would sustain a loss of future earnings during the period of his work expectancy in the total sum of $31,627. On cross-examination, Meier was asked if he was assuming any change in economic growth as inflation and responded that his computations were based on the assumption that the rate of inflation of the past would continue. Defendant Bender then moved to strike Meier's testimony on the ground that the statistics used would have no established relationship to the

community because the figures were based on Statewide figures and not confined to Coles County, where plaintiff worked and that there was no evidence to show that any loss would continue was overruled. But this witness testified that "this data would be applicable for Coles County just as it would be for any other county in the State."

Defendant-Appellant Rose states that the issue which he presents for review are:

## A

Can the $75,000 judgment stand when it is based on the "false fact" of a $31,627 future wage loss which the evidence will not support?

## B

Under the evidence and considering the admissions of counsel, was Defendant Rose guilty of wilful and wanton misconduct?

■■ Defendant Rose is represented in this Court by counsel who did not represent him at the trial level. With reference to Point A, defendant Rose first argues that Meier was a "surprise witness" who should not have been permitted to testify. We will not consider this issue since the record establishes that trial counsel for Rose made no objection to plaintiff's tender of Meier as a witness. There was an objection by Bender's counsel but the objection was neither joined in nor adopted by Rose and Bender's objection does not inure to the benefit of Rose on this appeal. *Nelson v. Union Wire Rope Corp.*, 39 Ill.App.2d 73, 108, 187 N.E.2d 425; *Central Standard Life Insurance Co. v. Gardner*, 36 Ill.App.2d 292, 302, 183 N.E.2d 881.

■■ This defendant also complains that Meier used "actual" as distinguished from "neutral" figures in projecting future loss of wages and that his estimate was based upon assumed future inflationary trends. He also urges that the witness Helton established a "false fact" which was then adopted and used by Meier in his testimony concerning future wage loss. He argues that the 11% loss of production estimate, which Helton arrived at by deducting his 25% share of the "slow line" from his previous production record of 36% of the "fast line" constitutes the "false fact". Examination of the record, however, indicates that Helton's testimony represents 12 full pages of questions and answers. He explained how production records were kept, how payrolls were made up, how production was reflected in paychecks since side lasters were paid on a piecework basis; he gave figures as to production of the fast line on which plaintiff worked prior to his injury with testimony as to his earnings for a period of 7 weeks prior to injury, gave production line figures on the "slow" line to which defendant was assigned after the injury and these

figures were current to the date of trial. The record further reveals that neither defendant Rose nor defendant Bender interposed a single objection to any question put to Helton nor to any answer elicited from him, nor was there any motion, by either, to strike any part of his testimony. Neither Rose nor Bender can be heard, in this Court, to object to the content of the testimony of Helton. A party will not be permitted to raise objections to evidence in an appellate court which were not urged in the trial court. (*Blyzes v. Midwest Towing Co.*, 109 Ill.App.2d 48, 57, 248 N.E.2d 305; *Nelson v. Union Wire Rope Corp.*, 31 Ill.2d 69, 116, 199 N.E.2d 769.) The same rule applies to the testimony of Meier whose direct testimony also covers some 12 pages of the record during which defendant Rose made not a single objection. Defendant Bender made but one which was overruled but that ruling is not assigned as error. Defendant Rose made no motion to strike any of Meier's testimony. As we have noted, Bender moved to strike the testimony on the ground that the statistics on which it was based had no relation to Coles County where plaintiff was employed; but Meier then testified that his figures were indeed applicable to Coles County, and to every other County in the State. This testimony stands unrebutted, and the court's ruling on the precise question presented by the motion to strike was not error.

■■■ Defendant Rose next argues that there is no evidence that plaintiff's injuries diminished his ability to work and there is no medical testimony to that effect. Doctor Stanley Brandon, an orthopedic surgeon testified that plaintiff had two fractured ribs and a vertebrae fracture, thoracic vertebrae. That x-rays of the lower fourth thoracic vertebra, lumbar spine and vertebra revealed a shift to the right through the 11th thoracic vertebra with associated compression fracture at that level. His diagnosis was "severe compression fracture of the 11th thoracic vertebra with nerve route irritation." Doctor Brandon eventually performed surgery and fused the 10th to the 12th thoracic vertebrae. That the scars at the site of the surgery are permanent. That defendant might or could develop arthritis in the area of the surgery or fracture, that such a condition could cause pain. Plaintiff was referred to Doctor Walter Petersen, an orthopedic surgeon, for post operative care. Doctor Petersen testified that plaintiff was discharged from the hospital on October 15, 1969, that he released plaintiff to return to work on December 22, 1969. That he continued to see plaintiff thereafter and that on September 3, 1970, defendant was still complaining of discomfort in his low back. That there was a "fixed extension contracture—below the level of the injury". That plaintiff had a fibrous ankylosis that appeared to be more permanent than "* * * we thought it would be in December". Doctor Petersen testified that the symptoms of pain which plaintiff was enduring on Sep-

tember 3rd might be permanent in nature. That the immobility of the vertebrae involved in the fusion is permanent. The doctor testified that he would not expect plaintiff's normal work life expectancy to be reduced by the injury, that he did not foresee "* * * any significant care for the residual complaints, although he may seek some advice and care from time to time". That with heavy lifting plaintiff could have pain on a permanent basis. Plaintiff's own testimony, as above indicated, is to the effect that he is tired and worn out after a day's work, that he is unable to last as many shoes now as before his injury. That his hip is numb at the point where bone was removed for use in the fusion procedure. The question of diminution of earning capacity, as well as the permanency of his injuries are questions of fact to be decided by the jury. (*Seyferlich v. Maxwell*, 28 Ill.App.2d 469, 171 N.E.2d 806.) The plaintiff himself may testify, as here, that his injuries diminished his capacity to work, and the general rule is that the appearance of the plaintiff on the witness stand, his testimony as to the nature of his injuries and their duration is sufficient to take the question of impaired earning capacity to the jury. (22 Am.Jur.2d Damages, sec. 314.) The evidence here was sufficient to permit a jury to find that plaintiff's earning capacity was permanently impaired. Though not included in the statement of issues presented for review, Rose argues that the jury was instructed that among the elements of damage to be considered was "The value of earnings lost and the present cash value of earnings reasonably certain to be lost in the future", but that I.P.I. 34.02 which contains the formula for making the reduction of future wage loss to present cash value was not given. The failure to give I.P.I. 34.02 is not reversible error *per se, Kubajak v. Verbrugge*, 59 Ill.App.2d 344, 207 N.E.2d 344. Defendant did not object to the damage instruction which was given nor did he tender an instruction from the 34 series of I.P.I. and not having done so, he cannot now complain. (*Savage v. Chicago and Joliet Elec. Ry. Co.*, 238 Ill. 392, 87 N.E. 377; *Perry v. Nevin Hotel Co.*, 349 Ill.App. 22, 109 N.E.2d 810.) Illinois Revised Statutes 1971, Ch. 110, par. 67—3 provides, "No party may raise on appeal the failure to give an instruction unless he shall have tendered it." There is no merit to the point raised about the instructions.

■■ Defendant Rose also argues that the evidence will not support the jury's finding of wilful and wanton conduct. We have briefly summarized the facts above. There is sufficient evidence to support the finding.

■ Defendant also argues that, in closing argument, plaintiff's counsel, as to defendant Rose, made binding "judicial admissions" which preclude recovery. We have examined the closing argument. In *Sabo v.*

*T. W. Moore Feed and Grain Co.*, 97 Ill.App.2d 7, 239 N.E.2d 459, plaintiff's counsel, in argument to the jury as to the defendant Humphreys, stated that "*  *  * he was particularly impressed with Humphreys' truthfulness  *  *  * that he could not in good conscience, state that he felt Humphreys was at fault  *  *  *". The court held that unless these statements of counsel constituted judicial admissions they would not serve to relieve defendant of liability. That "Judicial admissions are to be distinguished from evidential admissions in that the former are binding and are to be considered incontrovertible". Here, plaintiff's counsel was stating his own opinion as to what the evidence showed and, in addition told the jury "I will say we want you to examine the evidence and if you think I am wrong about that, then you have a right to return such a verdict." The remarks in question did not, under these circumstances, constitute judicial admissions nor relieve defendant Rose of liability.

■■ Defendant Bender's brief contains no statement of the issue or issues presented for review as required by Supreme Court Rule 341. We assume that portion of the brief entitled "Points and Authorities" to set forth the issues to be reviewed. Many of the points relied upon by Bender are identical to those argued by Rose and there is no need to repeat them.

■■ Bender argues that there is no evidence to show that plaintiff was in the exercise of due care. The evidence shows that Rose was driving, that plaintiff was seated to the right of the driver, next to the passenger's door and that plaintiff's daughter was seated in between, that Rose did not recall plaintiff saying anything prior to the impact. Assuming, arguendo, that this evidence establishes the plaintiff did nothing, that he simply sat in the cab as a passenger, it seems clear that the issue of due care on his part was properly left to the jury. This has been held to be true even in cases where the injured passenger is asleep (and of course did nothing) at the time of the collision. (*Gillan v. Chicago North Shore and Milwaukee Ry. Co.*, 1 Ill.App.2d 466, 117 N.E.2d 833; *Opp v. Pryor*, 294 Ill. 538, 128 N.E. 580.) The Court in *Gillan* observed that the passenger in *Pryor* "was for all practical purposes sound asleep when approaching the railroad crossing". Here plaintiff was in no better position and had a right to assume that Rose was looking carefully since plaintiff was a passenger having no control over the operation of the truck. (*McCormack v. Haan*, 30 Ill.App.2d 311, 174 N.E.2d 206.) In *Hatcher v. New York Central R.R. Co.*, 17 Ill.2d 587, 593-594, 162 N.E.2d 362, the court said:

> "With reference to the duty of a passenger riding in an automobile the language of the court in *Rhoden v. Peoria Creamery Co.* 278 Ill.App. 452, 464, 465, is particularly applicable here. There

the court said: 'In Christensen v. Johnston, 207 Ill.App. 209, the court quoted with approval the following language from Clarke v. Connecticut Co. 83 Conn. 219: "What conduct on the passenger's part is necessary to comply with his duty must depend upon all the circumstances, one of which is that he is merely a passenger having no control over the management of the vehicle in which he is being transported. Manifestly, the conduct which reasonable care requires of such a passenger will not ordinarily, if in any case, be the same as that which it would require of the driver. While the standard of duty is the same, the conduct required to fulfill that duty is ordinarily different because their circumstances are different." A passenger riding as an invited guest in an automobile is only required to exercise such care as the exigencies of the situation require; in other words, such guest is bound to use such care and caution as a person situated in like circumstances would exercise (Fredericks v. Chicago Rys. Co. 208 Ill.App. 172), and the fact that defendant in error did not do or say anything as the car approached the truck did not, in our opinion, show, as a matter of law, that she was not in the exercise of ordinary care for her own safety. The question whether she did or failed to do all that a reasonable person in like circumstances would have done was properly submitted to the jury by the trial court.' "

The question of plaintiff's due care was properly submitted to the jury.

Bender argues that evidence which has no probative force whether objected to or not cannot be considered and that "The testimony of Helton and Meier should have been stricken * * *". The trouble with this proposition is that neither Bender nor Rose made a motion to strike the testimony of Helton. Bender's motion to strike the testimony of Meier was based on a ground different than raised on this appeal and as previously noted the court's ruling on the objection was correct. For reasons best known to themselves, counsel, during the trial, were content to let the testimony be adduced without objection and without moving to strike any portion of Helton's testimony. As a general rule evidence to which no objection is made is properly in the case for all purposes (*Knight v. Chicago and North Western Ry. Co.*, 3 Ill.App.2d 502, 123 N.E.2d 128), and generally incompetent evidence, when admitted without objection has the same effect and is given the same consideration as though it was legally admissible and is entitled to its natural probative effect and force (*Sheffield v. City of Chicago*, 328 Ill.App. 321, 65 N.E.2d 486), and evidence admitted without objection is entitled to due weight in deciding the issues and this rule has been applied to secondary evi-

dence and to expert opinion as well. (*Duncan v. Martin's Restaurant, Inc.,* 347 Ill.App. 183, 106 N.E.2d 731.) In addition there is other competent evidence in the record, including the testimony of the plaintiff himself, which is sufficient to support the proposition that his earning capacity has been permanently diminished. There was no objection by either defendant to submitting the issue to the jury at the time of the instruction conference.

■■ Defendant Bender complains of matters and rulings of the court involved in final arguments of counsel. We have considered this point, find that no error was committed and deem the point to require no further comment.

■■ Lastly, we observe that this appeal is largely an effort to persuade us to reverse a case upon questions of evidence and instructions to which no objections were made. The place to try a case is in the trial court, not in a court of review.

Judgment affirmed.

CRAVEN, P. J., and TRAPP, J., concur.